297 Ga. 257
FINAL COPY

S15A0590. COTTON v. THE STATE.

BLACKWELL, Justice.

Dustin James Cotton was tried by a Clayton County jury and convicted of murder and other crimes in connection with the fatal stabbing of Tyriss Turner. Cotton appeals, contending that the verdict is against the weight of the evidence. Cotton also asserts that the trial court erred when it denied his motion for pretrial immunity, when it admitted evidence of incriminating messages that he sent through Facebook, and when it refused his request to charge the jury on defense of others. We see no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Cotton had a home in Pennsylvania, but in July 2011, Cotton was living

---

[1] Turner was killed on July 30, 2011. Cotton was indicted on October 4, 2012 and charged with malice murder, felony murder, aggravated assault, cruelty to children in the first degree, and the unlawful possession of a knife during the commission of a felony. Cotton was tried beginning on May 5, 2014, and the jury returned its verdict on May 9, 2014, finding Cotton guilty of all charges. The verdict as to felony murder was vacated, the aggravated assault merged into the malice murder, see Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993), and the trial court sentenced Cotton to imprisonment for life for malice murder, a consecutive term of imprisonment for twenty years for cruelty to children, and a consecutive term of imprisonment for five years for unlawful possession of a knife. On May 12, 2014, Cotton filed a motion for new trial, he amended that motion on October 21, 2014, and the trial court denied the motion on October 30, 2014. Appellant timely filed a notice of appeal on November 5, 2014. The case was docketed in this Court for the January 2015 term and submitted for decision on the briefs.

with Turner, Turner's six-year-old daughter, and Cotton's sister (who was also Turner's girlfriend) in Turner's apartment near Jonesboro. On the evening of July 30, Turner and Cotton's sister got into an argument that escalated into a physical altercation. Cotton intervened and fought with Turner in the living room of the apartment. Cotton pushed Turner into a lamp, went into the kitchen, returned to the living room with a knife, and stabbed Turner in the chest in the presence of Turner's young daughter. Cotton then fled the scene and went back to Pennsylvania. Cotton's sister took Turner to the hospital, where Turner later succumbed to his wounds.

Cotton argues that he is entitled to a new trial because the guilty verdict, he says, was against the weight of the evidence. But the discretion to grant a new trial on the basis that the verdict is "decidedly and strongly against the weight of the evidence" is a discretion committed exclusively to the trial court. OCGA § 5-5-21. See also Smith v. State, 292 Ga. 316, 317 (1) (b) (737 SE2d 677) (2013). As an appellate court, we cannot consider whether the verdict is consistent with the weight of the evidence, and our review is limited instead to the legal sufficiency of the evidence. While Cotton claims that the evidence

2

presented a "textbook" case of self-defense,[2] the jury "was free to accept the evidence that the stabbing was not done in self-defense and to reject any evidence in support of a justification defense." Grimes v. State, 293 Ga. 559, 560 (1) (748 SE2d 441) (2013) (citation and punctuation omitted). Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Cotton was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Before trial, Cotton filed a motion for immunity from prosecution under OCGA § 16-3-24.2. Following a hearing, the trial court denied Cotton's motion, and Cotton now claims that the trial court employed the wrong standard when it determined that his justification defense was not strong enough to afford him immunity from prosecution. We disagree.

---

[2] Cotton testified that the altercation with Turner occurred in the kitchen and that he grabbed the knife while Turner was attacking him. But Turner's daughter testified that the altercation was in the living room and that Cotton broke free from the fighting, went to the kitchen, returned to the living room with a knife, and stabbed her father. Physical evidence found at the crime scene corroborated the testimony that Turner was stabbed in the living room, not the kitchen as Cotton claimed.

To avoid trial based on a justification defense presented at an immunity hearing, "a defendant bears the burden of showing that he is entitled to immunity under OCGA § 16-3-24.2 by a preponderance of the evidence." Bunn v. State, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). Here, Cotton points out that, at the hearing on his immunity motion, the trial judge did not reference the Bunn standard or explicitly say that he had weighed the evidence. The trial judge did say at one point that he found the conflicts in the evidence sufficient to send the case to a jury, and he later clarified that he had weighed the evidence during the immunity hearing and determined not only that Cotton failed to show that he was entitled to immunity by a preponderance of the evidence but that it appeared "more likely than not that [Cotton] was *not* acting in self-defense [when he killed Turner]" (emphasis supplied). Because the trial court properly weighed the evidence and found that Cotton failed to meet his burden under the standard enunciated in Bunn, id., this enumeration of error has no merit.

3. Cotton also alleges that the trial court erred when it admitted evidence of two incriminating messages that he sent through Facebook.[3] In the first

---

[3] Cotton sent the messages to Facebook accounts set up in fictitious names by Turner's mother and her friend. Turner's mother testified that, after Cotton killed her son and fled to Pennsylvania, she and her friend used false names to become Facebook "friends" with "Bucky Raw," which Cotton acknowledged was a "rap name" that he used. Turner's mother

4

message, Cotton wrote that "I KILLED TY AND IT FELT REAL GOOOOOOOOD DOING IT," and in the second message he wrote, "im [sic] happy i killed ty."[4] On appeal, Cotton claims that these messages were not properly authenticated.[5] But Cotton's only objection to the Facebook messages at trial was that they were "prejudicial and not probative." As a result, Cotton has waived any other claim about the admissibility of the messages. See OCGA § 24-1-103 (a) (1); see also Quintanilla v. State, 273 Ga. 20, 21 (2) (537 SE2d 352) (2000); Sowell v. State, 327 Ga. App. 532, 536 (1) (759 SE2d 602) (2014) (defendant waived claim that document was not properly authenticated when he failed to make such an objection at trial).

Even if it were otherwise, Cotton's claim about the authentication of the Facebook messages appears to be meritless. We have held that "[d]ocuments

---

testified that, while her friend was at her house, they contacted Cotton via Facebook using their fake names and were able to engage him in online conversations, in the course of which he sent the incriminating messages to them.

[4] Cotton acknowledged that he was the author of these messages, but he said that he wrote them because he believed Turner was dangerous and he came to realize that Turner could have eventually killed his sister if Cotton had not stabbed him.

[5] In the heading for this enumeration of error in his brief, Cotton says that the introduction of the Facebook messages also violated his right to confront the witnesses against him. But Cotton never again refers to this claim, and we consider it abandoned. See Supreme Court Rule 22 ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned."); see also Zamora v. State, 291 Ga. 512, 516 (6) (731 SE2d 658) (2012).

from electronic sources such as the printouts from a website like [Facebook] are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence." Burgess v. State, 292 Ga. 821, 823 (4) (742 SE2d 464) (2013) (citations and footnote omitted).[6] Here, Turner's mother testified that she knew Cotton went by the name "Bucky Raw" because she saw videos that he had posted — and in which he appeared — on YouTube using that alias, because she saw that Cotton's friends and family were Facebook "friends" with "Bucky Raw," and because she was able to discern Cotton's identity through the conversations she had with him on the accounts that she and her friend had set up. As a result, even if Cotton had made an objection to this evidence on authentication grounds, the trial court would not have abused its discretion in overruling it.

4. Finally, Cotton alleges that the trial court erred when it refused his request to charge the jury on defense of others. At trial, both Cotton and

---

[6] Although Burgess was based on the old Evidence Code, there is nothing in the new Evidence Code that forbids the use of circumstantial evidence to authenticate these types of electronic communications. See OCGA § 24-9-901; Paul S. Milich, Ga. Rules of Evidence, § 7:6 (2014) ("Personal websites, such as Facebook, are authenticated in the same way as other documentary evidence, though the court must be alert to the possibility of unauthorized access to or counterfeiting of websites. A website may be authenticated by traditional means such as the direct testimony of the purported author or circumstantial evidence of distinctive characteristics on the site that identify the author.") (citations and punctuation omitted).

Turner's daughter testified that Cotton intervened in the physical altercation between Turner and Cotton's sister. But Cotton also testified that he intervened in order to grab his sister because he "guess[ed] she [was] trying to go after [Turner]." And he explicitly testified that, after he began fighting with Turner, he was worried about his own safety and not his sister's, that Turner wrestled him to the kitchen and away from his sister in the living room, and that he stabbed Turner in order to defend himself and not his sister. This unequivocal testimony showed that Cotton did not kill Turner to protect his sister from an "imminent use of unlawful force" by Turner. OCGA § 16-3-21 (a). And because there was no evidence that Cotton killed Turner in defense of his sister (or any other third party), the trial court did not err when it refused to charge the jury on defense of others. See Hicks v. State, 287 Ga. 260, 262 (2) (695 SE2d 195) (2010).

Judgment affirmed. All the Justices concur.

Decided June 1, 2015.

Murder. Clayton Superior Court. Before Judge Collier.

Viveca R. Famber Powell, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Jay M. Jackson, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vicki S. Bass, Assistant Attorney General, for appellee.