In the Supreme Court of Georgia

Decided: September 12, 2016

S16A1081. SANDERS v. THE STATE.

BLACKWELL, Justice.

Benji Cortez Sanders was tried by a Sumter County jury and convicted of the murder of Sheila Freeman. Sanders appeals, contending that the evidence is legally insufficient to sustain his conviction, that the trial court erred when it denied his motion for a mistrial, and that it erred when it discharged a juror after the trial was underway. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Freeman was killed on April 30, 2002. A Sumter County grand jury indicted Sanders on July 11, 2002, charging him with malice murder, felony murder, aggravated battery, and child cruelty in the second degree. Sanders's trial began on May 27, 2003. The jury returned its verdict two days later, finding Sanders guilty of malice murder, felony murder, and aggravated battery and not guilty of child cruelty. On June 3, 2003, Sanders was sentenced to imprisonment for life for malice murder. The verdict as to felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated battery merged with the malice murder. On July 15, 2010, Sanders requested leave to file an out-of-time motion for new trial. That same day, the trial court granted the request, and Sanders filed a motion for new trial. Sanders amended his motion on October 7, 2010, and the trial court denied Sanders's motion for new trial on November 2, 2015. Sanders timely filed a notice of appeal on November 10, 2015. The case was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Sanders and Freeman were the parents of a one-year-old girl, and Sanders lived "on and off" with Freeman and their daughter in Americus. Around 2:30 on the morning of April 30, 2002, Freeman called her mother and said that she planned to let Sanders know that he was no longer welcome to stay at her home. About an hour later, Sanders called Freeman's mother and admitted that he and Freeman had "been fighting" and that Freeman was not breathing.

Minutes later, first responders arrived at Freeman's home and found her unresponsive on her bed. Sanders was "very excited," "going from room to room, hitting the walls," and said something about Freeman attacking him. Sanders also spontaneously told police officers at the scene that he had "f***ed up." The medical examiner testified that Freeman had been struck with a blunt object and strangled to death.

Sanders claims that the evidence is insufficient to sustain his conviction.[2] His appellate brief does not explain why he believes this to be so, but at the

---

[2] Sanders also argues that the verdict is against the weight of the evidence, but an appellate court "cannot consider whether the verdict is consistent with the weight of the evidence, and [its] review is limited instead to the legal sufficiency of the evidence." Cotton v. State, 297 Ga. 257, 258 (1) (773 SE2d 242) (2015).

hearing on his motion for new trial, Sanders noted that there was no evidence of a struggle, asserted that Freeman was too strong to have been strangled to death without a struggle, and speculated that Freeman could have died as the result of choking or sleep apnea. But especially given the testimony from Freeman's mother, the incriminating statements made by Sanders, and the medical evidence of bruising and hemorrhages that was consistent with Freeman having been hit with a blunt object and strangled to death (and that was inconsistent with choking and sleep apnea), the evidence "was sufficient to exclude every reasonable hypothesis other than [Sanders's] guilt and to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crime[] of which he was convicted." Washington v. State, 294 Ga. 560, 563 (1) (755 SE2d 160) (2014) (citing Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)).

2. Sanders claims that the trial court erred when it denied his motion for mistrial based on pre-trial publicity. According to Sanders, the jury was biased against him because some of the jurors had seen a front-page article in the local newspaper about his trial. The article quoted Freeman's mother, who said that Sanders had a history of abusing Freeman.

The trial court, however, allowed Sanders to ask the prospective jurors about the article, and the trial court was "satisfied from the responses given . . . of . . . their commitment to render a verdict based solely on the evidence presented at trial." Sanders can only speculate that the prospective jurors were influenced by the article despite their assertions to the contrary, and he has not shown "that any publicity was factually incorrect, inflammatory, or reflective of an atmosphere of hostility" or that he could not receive a fair trial. Eckman v. State, 274 Ga. 63, 68 (4) (548 SE2d 310) (2001). As a result, the trial court did not err when it denied his motion. See id. See also Ellington v. State, 292 Ga. 109, 140 (8) (b) (735 SE2d 736) (2012) ("[a] conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference") (citation omitted).

3. Finally, Sanders contends that the trial court erroneously discharged a juror after the trial had begun. The record does not reveal why the juror was excused,[3] but it is clear that the trial court announced its intention to excuse the

---

[3] The record shows that – as one of the State's witnesses was testifying – the trial judge asked him to "hold on just a second" and announced that there would be "a little break." The jury was excused from the courtroom, and the judge informed the parties that he

4

juror in open court, and Sanders offered no objection even when the trial court specifically asked him if there was any matter that needed to be addressed before the jury was brought back into the courtroom. Sanders failed to object when the trial court excused the juror, and he cannot be heard to complain about it on appeal. See Hudson v. State, 250 Ga. 479, 484 (3) (b) (299 SE2d 531) (1983) ("no objection was made to the dismissal of the juror at trial. Errors not objected to at trial will not be entertained by this court on appeal.") (citation omitted). See also Ensley v. State, 294 Ga. 200, 203 (2) (751 SE2d 396) (2013) (where appellant did not object to juror's continued service, "he has thus waived appellate review of the alleged impropriety. In any event, the trial court is vested with discretion to discharge a juror under OCGA § 15-12-172.") (citations omitted).

Judgment affirmed. All the Justices concur.

---

had received a note saying that one of the jurors "need[ed] to be dismissed from jury duty" and allowed to go home.