**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0554
The State
v.
Anthony Faison

On Appeal  from the Superior Court of Henry County
No. 2025SUCR0527HV

Decided: May 5, 2026

ELLINGTON, Justice.

The State appeals the trial court's order determining that Anthony Faison was immune from prosecution in connection with the shooting death of Curtis Johnson on April 16, 2025. The State indicted Faison in connection with Johnson's death on May 29, 2025, on three counts of felony murder – one based on criminal attempt to commit a felony (kidnapping), one based on burglary in the first degree, and one based on home invasion in the second degree – and one count each of criminal attempt to commit a felony (kidnapping), burglary in the first degree, home invasion in the second degree, and simple assault. On October 5, 2025, the court held an evidentiary hearing on Faison's motion asserting his immunity from prosecution, and on October 20, the court entered a written order declaring Faison immune from charges pursuant to OCGA § 16-30-20.

On appeal, the State asserts that the trial court erred in determining that Faison was justified in entering a residence while acting as a bail recovery agent, by applying the wrong law in determining that Faison was immune from prosecution, and in

determining that the Sheriff of Henry County could not revoke the authority of a bail recovery agent in his county. Because the trial court failed to apply the proper analysis in deciding Faison's immunity motion, we vacate the trial court's order and remand the case for further proceedings.

At the hearing on the immunity motion, Faison testified that, in early 2025, he was working as a licensed bail recovery agent[1] in Georgia, with registration in seven different Georgia counties, including Henry County. Faison renewed his registration in Henry County on or about February 5, 2025, and in his registration paperwork, Faison identified Jam Bonding as the registered bonding company with which he was affiliated. One of Jam Bonding's co-owners confirmed at the immunity hearing that Faison worked as a subcontractor for the company in early 2025.

However, sometime around March 5, 2025, Faison was personally served with a letter from the Henry County Sheriff (the "Sheriff") notifying him that, pursuant to the Henry County Sheriff's Office Bonding Company Rules and Regulations, his letter of authorization to operate as a bail recovery agent in Henry County was revoked (the "revocation letter"). According to Faison, the Sheriff drafted the revocation letter based on what Faison described as "unrelated felony charges within Henry County" that were pending against him at the time. Faison signed the letter on March 7, 2025, acknowledging its receipt. Jam Bonding also was

---

[1] Georgia law recognizes and regulates both "professional bondsmen" and "bail recovery agents." "Bondsmen or persons who hold themselves out as signers or sureties of bonds for compensation are declared to be professional bondsmen." OCGA § 17-6-50(a). "[T]he term 'bail recovery agent' means any person who performs services or takes action for the purpose of apprehending the principal on a bail bond granted in this state or capturing a fugitive who has escaped from bail in this state for gratuity, benefit, or compensation." OCGA § 17-6-56(a).

sent a copy of the revocation letter, and sometime before April 16, 2025, the company informed Faison that until Faison got the Henry County charges cleared, Jam Bonding could not use his services.

On or around April 15, 2025, the owner of a Florida bail bond agency commissioned Faison to recover Edward Atkins, who had absconded and was the subject of an outstanding bench warrant in Hillsborough County, Florida. The agency owner hired Faison to recover Atkins based on her belief that Atkins was staying with his girlfriend in an apartment complex in Henry County. Her suspicion was based on the following factors: Atkins's girlfriend had posted his bail; the Hillsborough County, Florida Sheriff's detective looking for Atkins told her that "a vehicle" had been discovered "close to Georgia in Jacksonville"; the girlfriend had a Georgia address at the apartment complex, although the agency owner did not have an apartment number; and Atkins was using his Cash App in Georgia at the same locations that the girlfriend was using her Cash App. Nevertheless, the agency owner expressly stated that she had no evidence that Atkins was staying with his girlfriend or residing at any other address in Georgia.

Faison agreed to work with the Florida agency owner, but in light of the revocation letter, he commissioned Johnson, whom he identified as another Georgia bail recovery agent, to act as a "partner" and to take "the lead" in the recovery of Atkins. Although Faison testified that he did not believe the revocation letter was valid, he intended to act only as "an oversight overseer" to make sure "what [Johnson] was doing was legit" and to offer advice in connection with Atkins's recovery. Faison acknowledged that he was not acting on behalf of Jam Bonding in connection with the recovery of Atkins.

Based on information provided by the Florida bond agency,

3

Faison and Johnson identified the apartment complex in the city of Stockbridge in Henry County where Atkins's girlfriend lived. On April 16, 2025, Johnson and Faison, along with Faison's son Romello,[2] met near the apartment complex to begin "surveillance" to verify Atkins's location. Faison did not, however, notify the Sheriff or the Stockbridge Police Chief prior to taking any action in that regard, although OCGA § 17-6-57(a) requires a bail recovery agent to provide such notification "prior to taking any action as a bail recovery agent" upon entering any local police jurisdiction for the purpose of "apprehending the principal on a bond[,] … capturing a fugitive, or engaging in surveillance of such principal or fugitive."[3]

When Johnson, Faison, and Romello subsequently arrived at the apartment complex, they had no evidence linking Atkins to the complex, nor did they know in which apartment his girlfriend resided, so Johnson went into the apartment's leasing office alone to obtain information. Jada Bridges, an assistant manager at the apartment complex, was working in the leasing office at the time.

---

[2] Romello was not a registered bail recovery agent, and, in fact, did not meet the minimum age requirement for an agent under Georgia law, which is "25 years of age." OCGA § 17-6-56(b). The State indicted Romello on the same charges as Faison in connection with this incident, as well as the additional offense of impersonating an officer.

[3] OCGA § 17-6-57(a) provides in full:

Any bail recovery agent who enters any local police jurisdiction in pursuit of and for the purpose of apprehending the principal on a bail bond or capturing a fugitive or engaging in surveillance of such principal or fugitive shall, prior to taking any action in his or her capacity as a bail recovery agent in that local police jurisdiction, notify by facsimile transmission or telephone the sheriff and police chief of the local police jurisdiction in which the surveillance, apprehension, or capture is to take place unless it is to take place in public.

She testified at the hearing that she provided Johnson with the apartment number, but she also testified that no one other than the girlfriend was listed on the lease and no one else was listed in the office records as residing in the apartment. Faison testified, however, that Bridges told Johnson that she had seen Atkins around the apartment the day before.[4] After Johnson asked Bridges to let him inside the girlfriend's apartment, she called the apartment complex's maintenance technician, who accompanied Johnson to the apartment. Before approaching the girlfriend's apartment, Johnson and the technician devised what the trial court termed a "ruse" for entering the apartment to determine if Atkins was there.[5] The technician testified that the plan was for Johnson and the technician to confirm Atkins's presence and then leave the apartment so the technician would not be there when Atkins was apprehended.

When the technician and Johnson arrived at the apartment, the technician knocked on the door and identified himself as "maintenance." The door was locked, and when there was no answer, the technician opened the apartment door with his key. Once the door was open, they encountered Atkins, and the technician told him that he and Johnson were there to check for a leak, although there was no active work order for the apartment or for a potential leak. The technician identified Johnson as a "new guy" who was helping him out. Although Faison testified

---

[4] The State raised no hearsay objection to this testimony, and the trial court relied on this evidence in granting Faison immunity. See OCGA § 24-8-802 ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").

[5] According to the technician, Faison participated in formulating this plan, but Faison testified that although he was aware of the plan, he did not help in its formulation.

that Bridges also accompanied Johnson and the technician into the apartment and that Atkins's girlfriend was there as well, Bridges testified that she stayed in the parking lot and never entered the apartment while either Johnson or Faison was there, and the technician testified that he never saw a female inside the apartment.

As Johnson and the technician were getting ready to leave the apartment, Faison and Romello came running in. The technician said that the two Faisons entered the apartment while "hollering 'agent, agent,'" and once inside, Faison discharged his taser.[6] After they entered, Atkins went into the apartment's bedroom, with Johnson following. Moments later, gunfire erupted. There is no evidence that Faison or the technician witnessed the shootings, as Faison said he exited the apartment before the gunfire started, and the technician said he left as it began. The State alleged in the indictment that Atkins shot and killed Johnson before taking his own life.[7]

Faison subsequently filed his "Motion to Declare Defendant Immune from Prosecution under OCGA 16-3-24.2," which provides that "[a] person who uses threats or force in accordance with Code Section 16-3-20, 16-3-21, 16-3-23, 16-3-23.1, 16-3-24, or 17-4-20 shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person." Faison's motion asserted that as a bail recovery agent, he had the

---

[6] Faison testified that he discharged his taser into a wall but did not make contact with anyone inside. Faison said he took that action as a "diversion" to allow Bridges and the technician to run out of the apartment. Faison said that he ran after them to make sure Bridges got away safely. However, as discussed below, Faison raises no claim on appeal that he is entitled to immunity because he was acting in defense of others.

[7] The appellate record contains no evidence concerning these events.

lawful authority to enter Atkins's girlfriend's apartment and further sought immunity on the charge of simple assault under OCGA § 16-3-21(a)[8] asserting that he was justified in using reasonable force in the protection of himself or others. Following the evidentiary hearing, the trial court found Faison immune, not under OCGA § 16-3-21(a) but pursuant to OCGA § 16-3-20.[9] In granting immunity, the trial court found that the Sheriff did not have the authority to revoke the ability of Faison to act as a bail

---

[8] Under § 16-3-21(a),

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

[9] OCGA § 16-3-20 provides:

The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed:

(1) When the person's conduct is justified under Code Section 16-3-21, 16-3-23, 16-3-24, 16-3-25, or 16-3-26;

(2) When the person's conduct is in reasonable fulfillment of his duties as a government officer or employee;

(3) When the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis;

(4) When the person's conduct is reasonable and is performed in the course of making a lawful arrest;

(5) When the person's conduct is justified for any other reason under the laws of this state, including as provided in Code Section 51-1-29; or

(6) In all other instances which stand upon the same footing of reason and justice as those enumerated in this article.

recovery agent in Henry County. Therefore, on the day of this incident the defendant was lawfully still designated as a bail recovery agent and was able to enter the apartment to recover … Atkins and use force reasonably necessary to accomplish that goal.

1. On appeal, the State asserts that the trial court erred in determining that Faison was acting as a registered bail recovery agent, which justified his entry into Atkins's girlfriend's apartment, and that the trial court applied the wrong legal analysis in determining that Faison was immune from prosecution under OCGA § 16-3-20 on that basis.

When evaluating a trial court's decision "granting or denying immunity, we review the evidence in the light most favorable to the trial court's ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them, whereas its legal conclusions are reviewed de novo." *Davis v. State*, 306 Ga. 430, 432 (2019) (quotation marks omitted). See also *State v. Hylton*, 321 Ga. 292, 293 n.2 (2025). Moreover, Faison bore the burden to prove by a preponderance of the evidence that his conduct was justified so as to entitle him to immunity under OCGA § 16-3-24.2. See *Cotton v. State*, 297 Ga. 257, 258 (2015); *Bunn v. State*, 284 Ga. 410, 413 (2008).

OCGA § 16-3-20 sets forth six bases for which the defense of justification is available and thus upon which immunity may be granted pursuant to OCGA § 16-3-24.2. But the trial court's order does not identify which of the enumerated statutory bases it relied upon in granting Faison immunity, and Faison does not identify the section of that statute under which he claims immunity. It is apparent, however, that on appeal Faison does not claim immunity under OCGA § 16-3-21(a), as he states in his appellate brief that "there never was a self-defense claim" and he does not

8

assert that he was acting in defense of others. Instead, he contends that "[t]he justification of any force used would come from being a licensed bail recovery agent."

Because Faison bases his claim of immunity solely on his status as a bail recovery agent with the right to apprehend a fugitive, certain sections of OCGA § 16-3-20 can be ruled out as inapplicable on their face. Nevertheless, the trial court's grant of immunity plausibly could have been based on sections (4), (5), or (6) of the statute. Section 4 of the statute, provides for the defense of justification "[w]hen the person's conduct is reasonable and is performed in the course of making a lawful arrest." Alternatively, his claim could fall under section 5, providing a justification defense "[w]hen the person's conduct is justified for any other reason under the laws of this state" or under section 6, providing that the defense of justification is available "[i]n all other instances which stand upon the same footing of reason and justice as those enumerated in this article."

However, the trial court did not analyze Faison's motion under the requirements of any particular provision of the statute.[10] Thus, it appears that the trial court did not consider, for instance, whether Faison proved by a preponderance of the evidence that his conduct "was reasonable" and "performed in the

---

[10] Although this Court acknowledged in *Hylton* that "OCGA § 16-3-24.2 does not require a trial court's order granting or denying immunity to include explicit factual findings or conclusions of law," 321 Ga. at 297, here, the trial court made a number of factual findings and conducted a legal analysis in reaching its conclusion that Faison was entitled to immunity under OCGA § 16-3-20. However, that analysis is incomplete because the trial court failed to consider the issue under any of the statutory grounds for finding a person's conduct to be justified. And because the statute lists six separate bases for justification, we cannot presume the basis of the trial court's legal conclusion from the record before us, as we did in *Hylton*.

course of making a lawful arrest" as required under Section 4; that his conduct was otherwise justified "under the laws of this State" under section 5; or that it presented an instance that stands "upon the same footing of reason and justice as those enumerated in [that] article" of the Georgia Code as required under section 6.

Instead, as the State notes, the trial court's analysis focused almost entirely on the question of whether the Sheriff lacked the authority to revoke Faison's status as a bail recovery agent in Henry County (a question we do not decide in this appeal), and upon determining that the Sheriff lacked such authority, the trial court concluded that this lack of authority was dispositive of the immunity issue. But even if Faison was still a registered bail recovery agent when he entered the Stockbridge apartment, that determination does not end the immunity analysis under OCGA § 16-3-20, which requires a trial court to determine whether Faison's conduct was justified under the specific standards set out in the statute.

Because the trial court not only failed to identify which basis for justification it was applying to Faison but also conducted an analysis that failed to track any of the potential statutory grounds for immunity, we vacate the trial court's order and remand for further proceedings.

2. Given this determination, we need not address Faison's remaining arguments.

*Judgment vacated and case remanded. All the Justices concur, except Warren, P.J., not participating.*

10