In the Supreme Court of Georgia

Decided: February 22, 2016

S15A1408. SMITH v. THE STATE.

HUNSTEIN, Justice.

Appellant John Lombard Smith was convicted of murder and related offenses in connection with the August 2005 shooting death of Betty Gaines. Smith now appeals, alleging evidentiary error and ineffective assistance of trial counsel. Finding no reversible error, we affirm.[1]

_____

[1] Smith was indicted in September 2005 by a Richmond County grand jury on charges of malice murder, felony murder, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Smith pled guilty to the felon-in-possession count, and, at the conclusion of a jury trial held in November 2006, he was found guilty on the remaining three counts. Smith was sentenced to life imprisonment for malice murder, plus two five-year terms, one consecutive and one concurrent, for the firearm possession counts; the felony murder count was vacated by operation of law. Smith filed a timely notice of appeal on December 7, 2006, but the appeal was not transmitted to this Court at that time. In December 2010, Smith's appellate counsel appeared in the trial court and moved for leave to substitute a motion for new trial for the notice of appeal. Though no order granting such motion appears in the record, Smith did in fact, though counsel, file a motion for new trial on January 20, 2011, which he amended on October 4, 2013. The trial court held a hearing on the motion in October 2013 and entered an order denying the motion on June 24, 2014. Smith filed a notice of appeal on July 17, 2014, after which the appeal was docketed to the September 2015 term of this Court and thereafter submitted for decision on the briefs.

Viewed in the light most favorable to the verdicts, the evidence adduced at trial established as follows. In the early morning hours of August 25, 2005, Gaines was shot and killed on Monroe Street in Augusta, Georgia. Witness Tiffany D'Antignac, who was on the front porch of her Monroe Street home on the night of the shooting, testified that, shortly before the shooting, Smith had emerged from the house next to hers and stated that he intended to kill Gaines because she had stolen his gun. Thereafter, D'Antignac testified, a white truck drove up, Gaines exited the truck, and Smith approached, "fussing with" Gaines about his gun. Gaines responded by "talking trash" to Smith, and Smith fired three shots at Gaines, who fell to the ground. Smith turned around and placed a call on his cell phone, stating, "I just killed Betty." According to D'Antignac, Smith then went back to his house, transferred some guns to the nearby home of his brother, Walter Smith, and left the scene with his sister-in-law. D'Antignac also testified that she had previously seen Smith with various guns, including a .32 caliber revolver, which he had purchased in her presence. The single projectile recovered in the autopsy of the victim was a .32 caliber lead bullet.

Witness Starlyta Stewart, who was on the front porch of a nearby house when the shooting occurred, testified that she saw Gaines exit a white truck and heard arguing just before the shooting, during which the shooter said, "taking from me is like taking your life." Witness Sharon Gaines, Smith's live-in girlfriend at the time – and of no relation to the victim – testified that Smith admitted to her that he had shot the victim over a missing gun. She also testified that Smith kept at least two guns at their home.

1. Though Smith has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Smith was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The determination of Smith's guilt rested largely on the credibility of the witnesses who testified at trial, the assessment of which lay squarely in the jury's purview. See Brooks v. State, 281 Ga. 514 (1) (640 SE2d 280) (2007).

2. Smith contends that the trial court erred by permitting the State to recall witness D'Antignac at the end of its case-in-chief. According to Smith, D'Antignac's appearance and demeanor upon recall improved dramatically from

the time of her initial testimony, when she had appeared disheveled and intoxicated; this witness's transformation, Smith asserts, constituted a change in circumstances that rendered her recall an abuse of discretion. However, at trial, Smith objected to the recall of D'Antignac only on the ground that the State sought to cover matters that had not already been explored on direct examination. Given Smith's failure to object at trial on the ground he now asserts, this issue has not been preserved for our review. See Russell v. State, 295 Ga. 899 (6) (764 SE2d 812) (2014).

3. Smith also contends the trial court erred in permitting the State to introduce a photograph of a nine millimeter pistol that was found when investigators searched the home of Smith's brother, Walter. The State conceded at trial that this gun was not the murder weapon, but sought to offer the photograph as well as the gun itself to corroborate D'Antignac's testimony that Smith had transferred guns from his home to that of his brother immediately following the shooting. The trial court admitted both the photograph and the gun, reasoning that this evidence was uncovered in the course of the investigation and that the defense was free to highlight for the jury the State's concession that this gun was not the murder weapon. Smith maintains that this

4

ruling was erroneous because this gun had no probative value in relation to the murder and was introduced only to create prejudicial innuendo.

"Georgia trial judges have the authority to balance the probative value of evidence against its negative effects and to exclude the evidence if the negative effects substantially outweigh that probative value." Paul S. Milich, Ga. Rules of Evidence, § 6:4, at 129 (2015-16 ed.).[2] "'The admission of relevant evidence that is challenged on the basis that its probative value is outweighed by its prejudicial impact is within the sound discretion of the trial court.'" Brooks, 281 Ga. at 517. Here, even if we were to find that the trial court erred in its balancing of probativity versus prejudice, we would nonetheless find that any such error was harmless. As the trial court noted, the introduction of this gun – which was indisputably not the murder weapon – actually helped bolster the defense's argument about the lack of physical evidence linking Smith to the murder. In addition, independent of the discovery of this particular gun, both D'Antignac and Sharon Gaines testified that Smith owned guns, and thus this gun was not the sole evidentiary link between Smith and guns generally.

[2]This basic tenet applies equally to cases, such as this one, tried prior to the January 1, 2013 effective date of the new Georgia Evidence Code, as it does to those to which the new code applies. See Milich, § 6:4, at 129.

Accordingly, even assuming arguendo the trial court erred in admitting this evidence, there is no reasonable probability that this error contributed to the judgment and therefore no occasion for reversal. See London v. State, 274 Ga. 91 (4) (c) (549 SE2d 394) (2001).

4. In Smith's final enumeration, he contends trial counsel rendered ineffective assistance in failing to seek a change of venue due to pre-trial publicity regarding the murder. To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 688, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012). Here, Smith cannot prevail on an ineffectiveness claim premised on counsel's failure to address pre-trial publicity because voir dire in this case was not transcribed and there is, thus, no evidence as to the effect of any such pre-trial publicity on the jury venire.

Absent such evidence, Smith cannot establish any reasonable probability that counsel's failure to address the alleged pre-trial publicity had any impact at all on the result of Smith's trial.

Judgment affirmed. All the Justices concur.