## S16A1039. CUSHENBERRY v. THE STATE.
### (794 SE2d 165)

NAHMIAS, Justice.

Appellant Christopher Cushenberry challenges his convictions for felony murder and conspiracy to commit armed robbery in connection with the shooting death of Javarus Dupree. We affirm.[1]

1. (a) Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On May 11, 2010, Appellant and co-indictees Henry Finley, James Jordan, and Brandon Taylor were together on and off throughout the day. During the times they separated, they stayed in nearly constant contact by phone. Appellant, who had spent all of his money partying the night before, told several people that he was planning to "goon[ ] out" and "hit some licks," slang terms for committing a robbery. To that end, Appellant had guns, and he and his co-indictees were actively seeking someone to rob.

At some point during the day, Dupree was selected as the victim. Around 3:00 p.m., Appellant and Jordan contacted Dupree, ostensibly to purchase marijuana. Once Dupree agreed to meet, Appellant and his three co-indictees drove together in Jordan's Cadillac to a gas station, where Jordan and Taylor left the vehicle and got into Dupree's car. Appellant and Finley then drove the Cadillac to the home of

---

[1] The victim was shot on May 11, 2010. On October 29, 2010, a Douglas County grand jury indicted Appellant, Henry Finley, James Jordan, and Brandon Taylor for malice murder, felony murder predicated on attempted armed robbery, conspiracy to commit armed robbery, and attempt to commit armed robbery. Appellant and Jordan were tried separately; Finley and Taylor were tried together. This Court previously upheld Finley's convictions. See *Finley v. State*, 298 Ga. 451 (782 SE2d 651) (2016). At a trial from October 17 to 27, 2011, the jury found Appellant not guilty of malice murder but guilty of the remaining charges. On November 30, 2011, the trial court sentenced him to serve life without parole for felony murder and ten years consecutive for conspiracy to commit armed robbery. On December 20, 2011, Appellant filed a motion for new trial, which he amended with new counsel on November 7, 2014. Following evidentiary hearings on December 10, 2014, and April 15, 2015, the trial court denied the motion on November 19, 2015. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

Finley's father, which was within walking distance of the apartment complex where the planned robbery was to take place.

Witnesses saw Dupree's car pull into the parking lot of the apartment complex's poolhouse, heard a single gunshot, and saw two men, who matched the descriptions of Jordan and Taylor, jump out of the car and run away in the direction of Finley's father's home, where Appellant and Finley were waiting. After Jordan and Taylor met up with Appellant and Finley, Appellant and Jordan argued; Jordan then drove away alone in his Cadillac. Shortly thereafter, Finley's father drove the three remaining men to a nearby mall. Appellant, Finley, and Taylor walked through the mall but left within minutes, as Finley's girlfriend picked them up and then dropped them off at their respective homes. That evening, Appellant told an acquaintance about the events of the day, saying that he and the others needed money, so they planned and attempted the robbery of Dupree.

After Dupree was shot in his car, his foot remained on the accelerator, causing the car to catch fire. A passerby pulled Dupree out of the car, and he was taken to a hospital, where he later died from a gunshot wound to the head. The police found a cell phone linked to Taylor lying outside the front passenger side of Dupree's car. Phone records showed numerous calls between the victim and Appellant and Jordan in the hours before the murder.

At trial, to help prove the motive and association of the co-indictees, the State presented the following evidence indicating their association with the Bloods gang: a red cap and bandanna found in Jordan's and Taylor's residences, respectively; MySpace photos of Appellant and others making gang signs; pictures of the gang-related tattoos of Appellant and his co-indictees; images from album covers and tattoos of Lil Wayne, a self-proclaimed Bloods member, which were similar to Appellant's and his co-indictees' tattoos; testimony from witnesses who heard Appellant yell "CTB," which means Cross the Track Boys, a gang affiliated with the Bloods; Appellant's statements to the police that Jordan was associated with Young N Thugging, another gang affiliated with the Bloods, and that Jordan committed the attempted robbery of the victim for "stripes" (meaning credibility or ranking in a gang); and expert testimony about the gang evidence.

Appellant testified at trial that he had been drinking and partying the night before and continued to drink throughout the day of the shooting. He acknowledged being with his three co-indictees during the day, said that they talked about "thugging," and claimed that Jordan decided to rob someone but he did not want to be a part

of the robbery. Appellant said that he had contact with the victim that day only to buy marijuana and that Jordan was solely responsible for the shooting.

(b) Appellant contends that the trial court erred in denying him a directed verdict of acquittal on all charges, asserting that the evidence at trial was insufficient to support his convictions because the State did not prove beyond a reasonable doubt that he was a party to the charged crimes under OCGA § 16-2-20.

> Pursuant to OCGA § 16-2-20 (b), a person may be convicted of commission of a crime even if he or she does not directly commit the crime but, instead, "[i]ntentially aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." . . . "[W]hether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed."

*Flournoy v. State*, 294 Ga. 741, 745 (755 SE2d 777) (2014) (citations omitted). See also *Butts v. State*, 297 Ga. 766, 770 (778 SE2d 205) (2015) (" 'All participants in a plan to commit robbery are responsible for the criminal acts that are a probable consequence of the plan and are committed while executing it.' " (citation omitted)).

Appellant admitted at trial that he was aware of the plan to rob Dupree, and the jury was entitled to disbelieve his testimony that he did not want to participate in the robbery. See *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)). Other evidence at trial showed that Appellant was with Jordan, Taylor, and Finley just before and shortly after Dupree was killed, that Appellant and Jordan both expressed their intention to rob someone, that Appellant needed money and had guns, that Appellant and Jordan contacted Dupree to arrange a purported drug deal, and that Appellant admitted that evening that he and his co-indictees had planned and executed the attempted robbery that resulted in Dupree's death. Thus, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt as a party to the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Butts*, 297 Ga. at 769-771; *Flournoy*, 294 Ga. at 746; *Ellis v. State*, 292 Ga. 276, 278-279 (735 SE2d 412) (2013).

2. Appellant raises several enumerations of error regarding gang-related evidence that was provided to the defense shortly before trial. Eleven days before Appellant's trial started, the State gave Appellant's counsel booking photographs of Appellant and Finley and identified as a witness Sergeant Jesse Hambrick, a supervisor in the Criminal Investigations Division of the Douglas County Sheriff's Office who is responsible for gang intelligence. On the following day, ten days before trial, the State gave Appellant's counsel documents regarding an examination of the tattoos on Appellant's and Finley's faces that noted their similarity to tattoos on self-proclaimed Bloods gang member Lil Wayne.

On the Thursday before trial, the sheriff's office executed search warrants to photograph any other tattoos on Appellant and Finley and all of the tattoos on Jordan and Taylor. The next day — the Friday before trial — the prosecutor received the additional photographs of Appellant's tattoos from the sheriff's office and filed a notice of discovery, which included the photographs of Appellant and related pictures of Lil Wayne, with the trial clerk's office at 10:39 a.m. That afternoon around 4:45 p.m., the prosecutor hand-delivered to Appellant's counsel a compact disc with these photographs. Appellant's counsel had a problem accessing the contents of the disc, however, and she was unable to view the pictures until the Monday morning that trial began. That morning, the prosecutor provided additional discovery, which included, in pertinent part, a video of Appellant's tattoos being photographed, the photographs of the co-indictees' tattoos, and copies of photographs from the MySpace pages of Appellant and others.

After the jury was selected, Appellant's counsel argued to the court that she was unable to effectively assist Appellant because she had no opportunity to review and prepare to rebut the evidence provided on Friday and that morning, and she moved to exclude the evidence or to continue the trial. The trial court denied both motions, but offered Appellant's counsel an opportunity to interview the State's gang expert, Sergeant Hambrick, about his expected testimony regarding this gang evidence. The court pointed out that Sergeant Hambrick was local, and the State agreed to make him available to the defense. This exchange took place seven days before Sergeant Hambrick testified in what turned out to be a ten-day trial.

(a) Appellant first contends that the trial court should have granted his motion to exclude the gang evidence that was provided to the defense on the Friday before and the morning of trial because the late disclosure violated OCGA § 17-16-4, which generally requires the prosecutor to make available to the defense no later than ten days before trial all tangible evidence that the State intends to use at trial.

See OCGA § 17-16-4 (a) (3) (A). See also OCGA § 17-16-4 (c) ("If prior to or during trial a party discovers additional evidence or material . . . which is subject to discovery . . . such party shall promptly notify the other party of the existence of the additional evidence or material and make [it] available as provided in this article."). If the State fails to comply with its statutory discovery obligations, the trial court has discretion under OCGA § 17-16-6 to fashion an appropriate remedy.[2] See *Chance v. State*, 291 Ga. 241, 245 (728 SE2d 635) (2012). Although the exclusion of evidence is among the potential remedies, that harsh remedy should be imposed only where there is a showing of both bad faith by the State and prejudice to the defense. See id.

The trial court here found that the prosecutor had not acted in bad faith, but instead acted promptly as he received new evidence. The record indicates that the State's investigation into whether the crimes were gang-related had started in earnest only about a week earlier, after Jordan's trial ended. Indeed, Appellant's trial counsel testified at the motion for new trial hearing that she did not believe that the prosecutor acted in bad faith. See *Cockrell v. State*, 281 Ga. 536, 539 (640 SE2d 262) (2007).

Nor has Appellant shown that he was prejudiced by receiving the evidence on the eve of trial. As the trial court explained, Appellant was on timely notice that the State would be offering evidence of this type because several pieces of evidence provided to him more than ten days before trial indicated that he and his co-indictees were affiliated with a gang. Appellant obviously was aware of the tattoos on his own body; his statements to law enforcement about Jordan's gang affiliation and potential motive of earning "stripes" in a gang, as well as a witness statement saying that Appellant was part of a gang, were provided to him more than ten months before trial; Sergeant Hambrick's name was provided as a potential witness 11 days before trial; and the comparison of Appellant's and Finley's face tattoos with Lil Wayne's tattoos was provided ten days before trial.

Moreover, the late-disclosed evidence did not alter Appellant's theory of defense, which was and continued to be the assertion that, despite his relationship with the co-indictees, he was merely present with them and did not aid and abet the attempted robbery. Finally,

---

[2] OCGA § 17-16-6 says in relevant part:
 If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. . . .

when the request by Appellant's counsel for a continuance of the trial was denied, she was offered an opportunity to interview the State's gang expert, who was the primary witness to discuss and explain this gang-related evidence and who did not testify until a week into the trial — at which point Appellant's counsel vigorously cross-examined him. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for the severe sanction of excluding the evidence that the State disclosed less than ten days before trial. See *Cockrell*, 281 Ga. at 539.

(b) Appellant also claims that the prosecutor committed misconduct by violating OCGA § 17-16-4, and specifically by delaying service of the gang-related evidence that the prosecutor received on the Friday before trial for six hours — from 10:39 a.m. to 4:45 p.m. Appellant did not raise this claim at trial, however, and so it was not properly preserved for appeal. See *Ford v. State*, 298 Ga. 560, 562 (783 SE2d 906) (2016). In any event, "when a defendant alleges a factually specific claim of prosecutorial misconduct, the defendant must show actual misconduct and demonstrable prejudice to his right to a fair trial in order to reverse his conviction." *Williams v. State*, 328 Ga. App. 876, 881 (763 SE2d 261) (2014). As discussed in the previous subdivision, Appellant has not shown that the prosecutor acted in bad faith or that the defense was demonstrably prejudiced, much less that any violation of OCGA § 17-16-4 rose to the level of a violation of constitutional due process. See *Williams*, 328 Ga. App. at 881 n. 26. This enumeration of error is therefore unfounded.

(c) Appellant contends that even if the trial court did not err in denying exclusion of the late-disclosed evidence, the court erred in denying his motion to continue the trial. As already discussed, instead of delaying the entire trial, the court gave Appellant the opportunity to interview the State's gang expert witness, who testified a full week later. Providing this remedy instead of a continuance was well within the trial court's discretion under the circumstances, particularly because the allegations of gang affiliation should not have surprised Appellant's counsel and did not alter his defense theory. See *Norris v. State*, 289 Ga. 154, 157 (709 SE2d 792) (2011) (affirming the denial of a motion for continuance where the defense failed to demonstrate that the late-discovered evidence was a surprise). See also *Leger v. State*, 291 Ga. 584, 588 (732 SE2d 53) (2012) (approving the trial court's giving the defendant the opportunity to interview the witness as a remedy for late disclosure).

(d) In his motion for new trial, Appellant raised the claims discussed above, and he subpoenaed the prosecutor to testify at the hearing on the motion about his handling of the gang evidence. The State filed a motion to quash the subpoena, which the trial court

granted. Appellant contends that this ruling was reversible error because no other witness could testify about when the prosecutor received the evidence, what action he took in handling the evidence, or why he delayed service for six hours on the Friday before trial.

We review a trial court's decision to quash a subpoena only for abuse of discretion. See *Bazemore v. State*, 244 Ga. App. 460, 463 (535 SE2d 830) (2000). Here, the trial court noted that the subpoenaed prosecutor was handling the motion for new trial for the State, making it difficult for him also to be a witness, and the court concluded that the prosecutor's testimony was unnecessary because there was sufficient evidence of his handling of the gang evidence from other sources. In particular, the record included the date and time of the discovery filing at issue and the testimony from Appellant's trial counsel about when and how she received the evidence from the prosecutor. Additionally, other witnesses from the sheriff's or district attorney's offices could have been called to testify about when the prosecutor received the compact disc containing the photographs and what his next steps were.

Moreover, as we held above, Appellant failed to show prejudice from the late disclosure of this evidence and failed to preserve a prosecutorial misconduct claim during trial, and that provided a sufficient basis for denying Appellant's claims regardless of the prosecutor's precise actions and motivations. For these reasons, the trial court's decision to quash the subpoena to the prosecutor was not an abuse of discretion.

(e) Turning to the substance of the gang evidence, Appellant contends that the trial court erred in ruling that evidence of his and his co-indictees' gang affiliation was relevant. However, Appellant did not object at trial to any of the admitted gang evidence on the ground of relevance, and he therefore did not preserve this claim for review on appeal. See *Hurt v. State*, 298 Ga. 51, 53-54 (779 SE2d 313) (2015).[3] In any event, as we explained in addressing a similar argument about similar evidence in the direct appeal filed by Appellant's co-indictee Finley, the gang evidence was relevant to "show the affiliation between the four [co-indictees] and explain the motive of the principals in committing the crimes." *Finley v. State*, 298 Ga. 451, 453 (782 SE2d 651) (2016). See also *Mallory v. State*, 271 Ga. 150, 153 (517 SE2d 780) (1999).

---

[3] This case was tried in 2011 and thus was governed by Georgia's old Evidence Code. Compare OCGA § 24-1-103 (d) (new Evidence Code provision authorizing plain error review of evidentiary rulings not objected to at trial).

(f) Finally, Appellant argues that the trial court erred in admitting unredacted pages from some of the MySpace accounts because the pages contained comments written by other MySpace users that were prejudicial to Appellant.[4] Even if we assume that this objection was preserved for review on appeal, Appellant has failed to show reversible error.[5] The unredacted statements had little probative value because they were not made by or directly related to Appellant, but for the same reason they had little prejudicial effect on Appellant. Thus, even if the comments should have been excluded, any error was harmless, particularly given the strength of the other evidence against Appellant. See *Bulloch v. State*, 293 Ga. 179, 186 (744 SE2d 763) (2013).

3. Appellant claims that his trial counsel provided ineffective assistance in two respects. To prevail on this claim, he must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. See also *Smith v. State*, 298 Ga. 491, 494 (783 SE2d 91) (2016) ("If the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the *Strickland* test, this Court is not required to examine the other.").

(a) First, Appellant claims that his trial counsel was ineffective because she proceeded to trial without having fully reviewed or adequately prepared to defend against the gang-related evidence disclosed just before trial. See Division 2 above. He also asserts that trial counsel should have researched, prepared, filed, and argued a written motion to exclude this evidence, and that she should have called witnesses, including his parole officer, to refute the evidence when it was admitted.

Pretermitting whether trial counsel — who orally moved to exclude the late-disclosed evidence and to continue the trial and then

---

[4] Appellant points to comments like "[m]e n my cuz yea we blood," "who yall finna go shoot . . . lol," and "B's up B's up bang bang."

[5] At trial, Appellant argued generally that all of the gang evidence was unfairly prejudicial, but when the MySpace pages were offered into evidence, he raised only a hearsay objection (which he does not raise on appeal). We note that Appellant argues that the MySpace evidence should have been excluded under OCGA § 24-4-403, but that provision is part of the new Evidence Code, and Appellant's 2011 trial was governed by our old Evidence Code. The old Code did not contain a provision like OCGA § 24-4-403, although the case law often applied a similar test. See, e.g., *Quedens v. State*, 280 Ga. 355, 361 (629 SE2d 197) (2006).

vigorously cross-examined the gang expert — was deficient, Appellant has failed to prove any resulting prejudice. He does not specify what else his counsel could have argued if she had been more prepared or how such additional argument would likely have led to a different ruling. See *Davis v. State*, 299 Ga. 180, 191 (787 SE2d 221) (2016); *Domingues v. State*, 277 Ga. 373, 374 (589 SE2d 102) (2003). Moreover, Appellant has not identified any witnesses, other than the parole officer, that he thinks should have been called at trial to refute the evidence, and he did not call any such witnesses, including the parole officer, at the motion for new trial hearing.

> "When a defendant claims that trial counsel performed deficiently in failing to [call] a witness for trial, the defendant may not rely on hearsay and speculation . . . to prove the prejudice prong . . . ." Rather, the defendant must introduce either testimony from the uncalled witness or a legally recognized substitute for his testimony . . . .

*Manriquez v. State*, 285 Ga. 880, 881 (684 SE2d 650) (2009) (citations omitted).

(b) Second, Appellant claims that his trial counsel was ineffective because she did not object to allegedly inappropriate personal attacks and improper arguments made by the prosecutor during closing argument. Arguing after the defense closing, the prosecutor said:

> I didn't want y'all to think that I'm some lying S.O.B. that manufactured a case out of thin air which is what they want y'all to believe and what they told y'all for an hour earlier today. They're the ones living in fantasy land. They're the ones that think this ain't serious. [Trial counsel] cracked a few jokes and then said, well, I'm not saying this isn't serious because [Appellant's] life is on the line. Well, first of all, he's not facing the death penalty. If he was, y'all would have known it long ago. So for her to inject that comment into this trial is to try to play on y'all's sensibilities.

At the motion for new trial hearing, Appellant's trial counsel explained that she dismissed the prosecutor's "smart aleck comments" and did not want to object to the remarks and draw the jury's attention to them because she did not think they were clearly inappropriate. The prosecutor's comments may have been close to, or even over, the line for permissible argument. However, given that the prosecutor was responding to arguments that Appellant's counsel had made, that the evidence presented during the multi-day trial

demonstrated that the case was not manufactured out of thin air, and that it was clear that this was not a death penalty case, the tactical decision not to object was not patently unreasonable. Appellant therefore cannot show deficient performance in this respect. See *Smith v. State*, 296 Ga. 731, 735-736 (770 SE2d 610) (2015) ("'Whether to object to a particular part of a prosecutor's closing argument is a tactical decision, and counsel's decision not to make an objection must be patently unreasonable to rise to the level of deficient performance.'" (citations omitted)). Nor do we believe that, even if an objection had been made and sustained, the result of the trial would in reasonable probability have changed. Accordingly, Appellant has not demonstrated that he received ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Sandra G. Dawson*, for appellant.

*Brian K. Fortner, District Attorney, Ryan R. Leonard, Sean A. Garrett, Emily K. Richardson, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General*, for appellee.