304 Ga. 299
FINAL COPY

S18A0886. HAWKINS v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Orlando Lamar Hawkins was found guilty of malice murder and other offenses in connection with the shooting death of Morie Jermichael Brooks.[1] On appeal, Hawkins contends that the trial court erred in its charge to the jury and that the trial court erred in denying his motion in

---

[1] On February 26, 2013, Hawkins was indicted for malice murder, two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon), aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a September 24-27, 2013 jury trial, Hawkins was found guilty of malice murder and the two firearm possession counts. He was acquitted on the remaining charges. On October 3, 2013, the trial court sentenced Hawkins to life imprisonment for malice murder, five consecutive years for possession of a firearm during the commission of a felony, and an additional five years for possession of a firearm by a convicted felon to run concurrent with the murder sentence. Hawkins filed a motion for new trial on October 25, 2013, which he amended on June 23, 2014. Following a September 2, 2014 hearing, the trial court denied the motion on November 20, 2014. Hawkins filed a timely notice of appeal on December 15, 2014, which he amended on June 16, 2015, and, following the payment of costs, his appeal was docketed in this Court for the April 2018 term and submitted for decision on the briefs.

limine to exclude from trial evidence of various Facebook messages. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, in the early morning hours of October 6, 2012, Brooks, the victim, was leaving an Atlanta nightclub with his friends, including Julian Holland, Rayshawn Boone, and Nicholas Caldwell, among others. Hawkins, who was a convicted felon, and his two associates, James Rogers, Jr., and a man named Hanad, who was also known as "T-Mac," approached Boone and asked him if he had any "molly," an illegal drug, to sell to them. Brooks asked what Hawkins and his group wanted with Boone, and he accused the men of attempting to rob Boone. Brooks and Boone then exchanged heated words with Hawkins' group, and Hawkins and his friends agreed to fight Brooks and Boone outside of the club. Brooks and Boone recruited their other friends to participate in the upcoming fight as they were exiting the club.

Hawkins and his associates then began walking away toward their car,[2] which was parked nearby. Some of this incident was captured on security

---

[2] The car in question belonged to Rogers, Jr.'s father, Rogers, Sr.

2

cameras at the club, and the security camera footage revealed that Hawkins was running to the car faster than the rest of his group.[3] When the rest of Hawkins' group got near the car, one of the people in the group called over to Brooks' group and told them to "come up here to the car." Fearing that Hawkins' crew might have retrieved a gun, Brooks and his friends did not walk toward Hawkins' group but instead began walking away in the opposite direction and going to their own cars. Some of this movement was caught on security cameras as well.

Hawkins' group got into their car, with Rogers, Jr., in the driver's seat, Hanad in the front passenger seat, and Hawkins, who was the only one wearing a sleeveless shirt, in the back seat on the driver's side. Before Brooks' group could reach their cars, Hawkins and his crew drove up to Brooks' group with the back window of their car rolled down and the headlights turned off, and Hawkins stuck his sleeveless arm out of the back driver's side window of the car

---

[3] Although testimony describing the contents of the surveillance video appears in the record, the video itself does not appear in the appellate record, as the trial court was unable to locate the original exhibit when compiling the record for appeal. There are, however, still frame photos in the record that document some of the events as described by the witnesses.

while brandishing a revolver. Brooks' group turned to run away, and then someone from the Hawkins group in the car yelled, "Yeah, talk that sh** now," just before a single shot was fired, which fatally struck Brooks from behind as he was running away.

Hawkins bragged to Rogers, Jr.'s, sister, Terri, that he was the shooter. Hawkins told Terri that she would hear about the shooting on the news, and Terri later saw such news reports, where she recognized Hawkins and her brother from the video footage shown and recognized her father's car as being the one used in the shooting. Terri told her father, Rogers, Sr., about his car being on the news in connection with a shooting, and Rogers, Sr., convinced Rogers, Jr., to go to the police. Hawkins later sent threatening Facebook messages to Rogers, Jr., accusing him of being a snitch for agreeing to cooperate with police.

The evidence was sufficient to enable a rational trier of fact to find Hawkins guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also OCGA § 16-2-20 (parties to a crime).

2. Hawkins contends that the trial court erred by charging the jury on

parties to a crime. However, "[t]o authorize a jury instruction . . . there need only be produced at trial slight evidence supporting the theory of the charge." Davis v. State, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). Here, substantial evidence supported the theory that Hawkins and his compatriots worked together to commit the drive-by shooting that resulted in Brooks' death. The evidence revealed that Hawkins was an active participant in the heated altercation with Brooks' group before the shooting; that Hawkins, along with his friends, rapidly returned to the car that was used during the shooting; that someone in Hawkins' group continued to escalate the situation with Brooks' group by inviting them to come to the car; that Hawkins got into the car with his friends and that they used the car to approach Brooks' group with the headlights off and the window down; that someone in the car threatened Brooks' group just before the shooting; and that Hawkins himself may have been the actual shooter after one of his friends drove him directly to a place where he could confront Brooks' group. We find no error from the trial court giving a charge on parties to a crime. See, e.g., Bragg v. State, 295 Ga. 676 (3) (763 SE2d 476) (2014). See also OCGA § 16-2-20.

3. Hawkins argues that the trial court committed plain error by failing, sua

5

sponte, to give a jury charge on accomplice corroboration. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness."). See also OCGA § 17-8-58 (b) ("Failure to object [to a portion of a jury charge] shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention [through a specific objection] as provided in . . . this Code section"); State v. Kelly, 290 Ga. 29 (1) (718 SE2d 232) (2011). There is no plain error here.

> In order to show plain error:
>
> First, there must be an error or defect — some sort of "deviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error

6

—     discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Citation, punctuation and emphasis omitted.) Kelly, supra, 290 Ga. at 33 (2) (a).

Relying on Stanbury v. State, 299 Ga. 125 (786 SE2d 672) (2016), Hawkins contends that, because Rogers, Jr., was his alleged accomplice and was the only witness to directly connect Hawkins to the actual shooting,[4] and because the trial court gave jury charges on parties to a crime and the fact that the testimony of a single witness is generally sufficient to establish a fact, the failure to give a charge on accomplice corroboration constituted plain error. In Stanbury, this Court found that the trial court committed plain error by failing to give a charge on accomplice corroboration where the court had charged the jury on a single witness' testimony being sufficient to establish a fact, and where the "accomplice['s] testimony served as the bedrock of the conviction[,] because [the accomplice] was the only witness who affirmatively identified [the defendant] as [a participant in the crimes]." Id. at 131 (2). Although there was

---

[4] Although the third man allegedly involved in the shooting, Hanad a/k/a "T-Mac," also testified at trial, he denied knowing Hawkins and Rogers, Jr., denied being with them at the club on the night of the shooting, denied knowing anything about the shooting, and further denied even being known as T-Mac.

slight evidence of corroboration to support a finding of guilt in Stanbury, the evidence "was in no way overwhelming, and, in some instances, it was conflicting." Id. Accordingly, "[u]nder the specific facts of [that] case," we concluded that "the outcome of the trial court proceedings was 'likely affected' by the trial court's failure to provide an accomplice corroboration charge to the jury." Id. at 129-131 (2).

Here, although the failure to give a jury charge on accomplice corroboration constituted a clear or obvious error, the record reveals that the error did not likely affect the outcome of Hawkins' trial. Unlike the situation in Stanbury, in the instant case there was significant and consistent evidence outside of the testimony provided by the accomplice to specifically connect Hawkins to Brooks' murder both at the scene of the crime and after the crime had been committed, including Hawkins' own admission to Terri Rogers that he had shot someone at the club that he went to with Rogers, Jr.; eyewitness accounts from Brooks' friends who recognized Hawkins from their altercation at the club and who recognized him as the one who had a sleeveless shirt before seeing a sleeveless arm emerge from a car window while brandishing a revolver; and security camera footage showing Hawkins at the scene and involved in the

8

altercation with Brooks' group before the murder and showing him running to the car involved in the shooting. In light of this substantial and consistent evidence corroborating Rogers, Jr.'s testimony, it is not likely that the failure to give a charge on accomplice corroboration here affected the outcome of the trial. See Hamm v. State, 294 Ga. 791 (2) (756 SE2d 507) (2014) (failure to give requested charge on accomplice corroboration constituted harmless error where defendant admitted to another person that he had killed someone and other independent evidence connected him to the shooting).

4. Hawkins asserts that the trial court erred in denying his motion in limine to exclude from trial evidence of screenshots of Facebook messages between Rogers, Jr., and an "OG Sosa Snap" account that Rogers, Jr., identified as belonging to Hawkins. Specifically, Hawkins contends that (a) the evidence should have been excluded because it was not properly authenticated, and (b) the evidence should have been excluded because it was provided to defense counsel only four days prior to trial. "This Court reviews a trial court's decision to admit or refuse to admit evidence for abuse of discretion." McCray v. State, 301 Ga. 241, 249 (6) (799 SE2d 206) (2017). See also Thompson v. State, 277 Ga. App. 323, 324 (2) (626 SE2d 825) (2006) ("A trial court's ruling on a

motion in limine is reviewed for abuse of discretion").

(a) Pursuant to OCGA § 24-9-901 (a) and (b) (1):

The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims . . . and . . . the following [is an] example[ ] of authentication or identification conforming with the requirements of this Code section: . . . Testimony of a witness with knowledge that a matter is what it is claimed to be.

"[D]ocuments from electronic sources such as the printouts from a website like Facebook are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence." (Citation and punctuation omitted.) Cotton v. State, 297 Ga. 257, 259 (3) (773 SE2d 242) (2015). Here, the Facebook messages in question involved threats that Rogers, Jr., received during message exchanges that he had with a user identified as OG Sosa Snap. During their conversation, OG Sosa Snap reminded Rogers, Jr., that there were "straps" (guns) everywhere, that OG Sosa Snap would be back in town soon, that Rogers, Jr., had "dug [himself] in sum [sic] deep shyt [sic]" for having committed the "major violation" of snitching, and that Rogers, Jr., should have "follow[ed] da code" of "death before dishonor." Rogers, Jr., testified that he recognized the messages

10

as coming from Hawkins' account, as he recognized a photo of Hawkins associated with the user account; that he was already familiar with the fact that the OG Sosa Snap Facebook page belonged to Hawkins even before the messages were sent to him; and that the messages depicted in the screenshots were in fact from a conversation that Rogers, Jr., participated in with OG Sosa Snap. We find no abuse of discretion in the trial court finding that this testimony was sufficient to properly authenticate the Facebook messages and allow for their admission into evidence at trial. Id. at 259-260 (3). See also Burgess v. State, 292 Ga. 821 (4) (742 SE2d 464) (2013).[5]

(b) With respect to the disclosure of the Facebook messages to defense

---

[5] As we explained in Cotton, supra, 297 Ga. at 259 n.6:
Although Burgess was based on the old Evidence Code, there is nothing in the new Evidence Code that forbids the use of circumstantial evidence to authenticate these types of electronic communications. See OCGA § 24-9-901; Paul S. Milich, Ga. Rules of Evidence, § 7:6 (2014) ("Personal websites, such as Facebook, are authenticated in the same way as other documentary evidence, though the court must be alert to the possibility of unauthorized access to or counterfeiting of websites. A website may be authenticated by traditional means such as the direct testimony of the purported author or circumstantial evidence of distinctive characteristics on the site that identify the author.") (citations and punctuation omitted).

counsel four days before trial, Hawkins contends that "the late disclosure violated OCGA § 17-16-4, which generally requires the prosecutor to make available to the defense no later than ten days before trial all tangible evidence that the State intends to use at trial." (Citations omitted) Cushenberry v. State, 300 Ga. 190, 193 (2) (a) (794 SE2d 165) (2016). See also OCGA § 17-16-4 (c) ("If prior to or during trial a party discovers additional evidence or material … which is subject to discovery … such party shall promptly notify the other party of the existence of the additional evidence or material and make [it] available as provided in this article.").

> If the State fails to comply with its statutory discovery obligations, the trial court has discretion under OCGA § 17-16-6 to fashion an appropriate remedy. See Chance v. State, 291 Ga. 241, 245 (728 SE2d 635) (2012). Although the exclusion of evidence is among the potential remedies, that harsh remedy should be imposed only where there is a showing of both bad faith by the State and prejudice to the defense. See id.

Cushenberry, supra, 300 Ga. at 194 (2) (a) (footnote omitted).

Here, the trial court concluded that "there was no showing of bad faith made that would prohibit the [admission at trial of the screenshot] evidence based on a notice violation in discovery." In this regard, despite the fact that Hawkins' counsel did not receive the actual screenshot evidence until four days

12

before trial, defense counsel conceded at the hearing on the motion in limine that the State reviewed the evidence with him eight days before trial, which was as soon as the State had received it from Rogers, Jr. We find that the record supports the trial court's conclusion that there was no showing of bad faith.

Further, Hawkins has not shown how he was prejudiced from the disclosure of the screenshot evidence less than ten days before trial. Indeed, the evidence in question was largely cumulative of testimony from Terri Rogers, who stated that she overheard Hawkins say that he "and some other guys [were] coming up with some money to put a price on [Rogers, Jr.'s] head to have him killed because [Hawkins thought] that [Rogers, Jr.,] told Atlanta [police] about the shooting and who did it and where to find [Hawkins]." See Culler v. State, 277 Ga. 717 (2) (594 SE2d 631) (2004) (no prejudice from admission of evidence disclosed on first day of jury selection where such evidence was cumulative of other evidence admitted at trial). Nor did the timing of the disclosure change Hawkins' theory of defense at trial. To the extent that defense counsel argued below that Hawkins could not properly defend himself because counsel did not have sufficient time to investigate the legitimacy of the Facebook messages, Hawkins did not move for a continuance before trial to

13

conduct any such investigation; he still argued to the jury that the messages may have been generated by someone other than Hawkins; and his theory at trial remained that "T-Mac" was the actual shooter and that Hawkins only intended to be involved in the fight with Brooks' group without wanting to be involved in any shooting. We find no abuse of discretion in the trial court's decision to allow the Facebook screenshots to be admitted into evidence at trial. See Cushenberry, supra, 300 Ga. at 194 (2) (a).

Judgment affirmed. Hines, C. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, and Peterson, JJ., concur.

Decided August 20, 2018.

Murder. Fulton Superior Court. Before Judge Tusan.

W. Devin Franklin, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Aslean B. Zachary, Cheveda McCamy, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.