**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 9, 2019**

# In the Court of Appeals of Georgia

A19A1204. IRVING v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Jonathan Quentin Irving was convicted of armed robbery, of multiple counts of aggravated assault, of making terroristic threats, of possession of a firearm during the commission of a felony, and of theft by taking of the firearm used in the robbery. He argues on appeal that the trial court erred in several evidentiary rulings, but we find no reversible error. He argues that the trial court erred in not excluding other evidence for purported discovery violations by the state, but we find no such violations. He argues that the trial court erred in denying his motion to remove a juror for cause after the start of trial, but we find no abuse of discretion. He argues that the trial court erred by applying the wrong standard in denying his motion for new trial, but the trial court's order does not reflect such error. Finally, he argues

that the trial court erred in failing to merge his convictions for aggravated assault with his convictions for armed robbery for sentencing purposes, and we agree. So we affirm in part, vacate in part, and remand the case for resentencing.

1. *Facts.*

Irving was tried jointly with a co-defendant, Christopher A. Blackwell, and we set forth many of the facts relevant to this appeal in our separate opinion deciding Blackwell's appeal. *Blackwell v. State*, __ Ga. App. __ (__ SE2d __) (Case No. A19A0758, decided July 1, 2019). Viewed in the light most favorable to the judgment, see *Garza v. State*, 347 Ga. App. 335 (1) (819 SE2d 497) (2018),

> the trial evidence showed that [Irving], along with several other people, planned and executed the robbery of a bank in Carrollton during the afternoon of April 29, 2013. That day, [Irving, Blackwell], Gibran Ezell, and one other man (who was not named at trial) drove in two cars from Atlanta to Carrollton. There, Ezell and the other man got into one car and drove to the bank. Inside the bank, Ezell shot a gun into the ceiling before pointing it at the numerous bank customers and employees who were present. The other man jumped over the teller counter and took approximately $14,000 in cash. During the robbery, the men demanded money, yelled profanities, and threatened to shoot the people inside the bank, frightening them. After leaving the bank, the men drove to a nearby road, abandoned their car, rejoined [Irving] and [Blackwell], and returned to Atlanta.

2

*Blackwell*, __ Ga. App. at __ (1).

The day after the bank robbery, Irving and another man, Chris Snelson, were arrested after a high-speed chase. Irving and Snelson had been traveling in a Dodge Charger, and when that car crashed in the course of the chase they fled on foot and were apprehended several hours later. The gun used in the bank robbery was found in the Dodge Charger. The gun had been stolen earlier that month.

An investigation of the bank robbery led law enforcement to arrest Ezell, who ultimately gave a statement implicating Irving and, at trial, described Irving's involvement in the robbery. Other trial evidence corroborated Ezell's testimony. As stated above, the gun used in the robbery was found in a car associated with Irving. When Irving and Ezell were being held in the same jail, Irving wrote Ezell letters alluding to the robbery and threatening Ezell not to admit his involvement to law enforcement. And the former girlfriend of Irving's co-defendant, Blackwell, testified to some of the same details as Ezell regarding events that took place in Atlanta on the morning of the bank robbery. She also connected Blackwell to a Dodge Charger.

2. *Evidentiary rulings*.

Irving argues that the trial court erred in several of his evidentiary rulings during trial. We review these rulings for abuse of discretion. *Williams v. State*, 302

Ga. 474, 478 (807 SE2d 350) (2017). And in doing so, we follow our Supreme Court's guidance in *Almanza v. State*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018), to determine the appropriate body of law to apply. As detailed below, we find no reversible error.

(a) *Admission of evidence of Irving's arrest after the high-speed chase.*

Irving argues that the trial court erred in admitting evidence of his "prior arrest," by which he apparently means evidence of his arrest after the high-speed chase that occurred the day after the bank robbery. He primarily asserts that this evidence was improper character evidence in violation of OCGA § 24-4-404 (b). We disagree.

OCGA § 24-4-404 (b) provides that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show conformity therewith." But these limitations "do not apply to 'intrinsic' evidence. Evidence is intrinsic when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." *Clark v. State*, __ Ga. __, __ (4) (829 SE2d 306) (2019) (citations and punctuation omitted). Stated another way, evidence is intrinsic if "it forms an

4

integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Thompson v. State*, 302 Ga. 533, 543 (III) (B) n. 9 (807 SE2d 899) (2017) (citation and punctuation omitted).

The evidence of Irving's arrest following the high-speed chase was intrinsic; it was both necessary to complete the story of the crimes and inextricably intertwined with the evidence regarding the charged offenses, because it established a connection between Irving and the stolen gun used in the bank robbery. See *Williams v. State*, 342 Ga. App. 564, 567 (1) (804 SE2d 668) (2017). So it was not subject to the limitations of OCGA § 24-4-404 (b).

The evidence of Irving's arrest "also must meet the balancing test of OCGA § 24-4-403[.]" *Clark*, __ Ga. at __ (4). Under that Code section, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. Although the evidence of Irving's arrest "may have incidentally placed (his) character at issue, its probative value was not substantially outweighed by the danger of unfair prejudice under these circumstances. Therefore, the trial court

5

did not abuse [his] discretion in admitting the . . . evidence at trial." *Fleming v. State*,

__ Ga. __, __ (3) (a) (830 SE2d 129) (2019) (citations and punctuation omitted).

In passing, Irving also questions whether some of the testimony in this case —
pertaining to statements made by Snelson and by an anonymous tipster to law
enforcement officers — was hearsay and violated the confrontation clause. He
mentions this issue in a single sentence within his argument supporting his claim that
the trial court erred in admitting evidence of his arrest following the high-speed
chase. But Irving offers no citation in support of this argument and no explanation of
how the argument pertains to his claim of error. It is not apparent from the record that
the challenged testimony was evidence of Irving's arrest. But even if it could be
construed as such, the trial court made no pre-trial ruling on Irving's hearsay and
confrontation clause claims and Irving did not object to the testimony on those
grounds when it was offered at trial; in fact, his trial counsel elicited the testimony
about the comment made by Snelson. Irving has presented no argument or citation of
authority to show that admission of the testimony about comments made by Snelson
or the tipster was plain error, see OCGA § 24-1-103 (d), and we are not persuaded to
reverse his convictions on hearsay or confrontation clause grounds.

(b) *Admission of evidence of Blackwell's prior armed robbery arrest.*

6

Irving argues that the trial court erred in allowing the state to cross-examine his co-defendant, Blackwell, about Blackwell's prior armed robbery arrest. In deciding Blackwell's appeal, we held that the trial court abused his discretion in this ruling. *Blackwell*, __ Ga. App. at __ (2) (a). But

> even where an abuse of discretion is shown, there are no grounds for reversal if the error did not affect a "substantial right," and thus harm, the defendant. In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so, and we assess whether it is highly probable that the error did not contribute to the verdict.

*Venturino v. State*, __ Ga. __, __ (2) (830 SE2d 110) (2019) (citing OCGA § 24-1-103 (a); other citations and punctuation omitted).

In *Blackwell*, __ Ga. App. at __ (2) (b), we determined that Irving's co-defendant, Blackwell, was harmed by the improper admission of character evidence concerning his prior armed robbery arrest. *Blackwell*, __ Ga. App. at __ (2) (b). We noted that the evidence against Blackwell was not overwhelming and held that we could not "say that it is highly probable that the admission of the evidence of Blackwell's prior arrest for armed robbery did not contribute to the jury's verdict that he was guilty for, among other crimes, armed robbery." Id. at __ (2) (b).

The same cannot be said for Irving. The evidence of Blackwell's prior arrest was less prejudicial to Irving than to Blackwell because it was less probative of Irving's character than it was of Blackwell's character. And there was significantly more evidence of Irving's guilt than of Blackwell's guilt. The accomplice, Ezell, was familiar with Irving and had known him for several years before the bank robbery, so there was no question regarding his identification of Irving as one of the men who planned and participated in the bank robbery. Cf. *Blackwell*, __ Ga. App. at __ (2) (b) (Ezell had not known Blackwell before the bank robbery, initially was unable to identify Blackwell in court, and was unsure whether Irving's references to "Chris" meant Blackwell or another person). Ezell testified about Irving's efforts to recruit him to rob the bank and Irving's efforts to prevent him from cooperating with the state after he was arrested. Moreover, there was evidence that the gun used in the bank robbery was in Irving's possession the next day. Given this evidence of Irving's guilt, we conclude it is highly probable that the trial court's error in admitting evidence of his co-defendant's prior arrest did not contribute to the verdict against Irving.

(c) *Admission of letters.*

Irving argues that the trial court erred in admitting into evidence the letters that Ezell received from Irving while the two men were being held in the same jail. The handwritten letters were unsigned, and Irving argues that the state did not properly authenticate them. We disagree.

"The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a). "The [s]tate was required to present sufficient evidence to make out a prima facie case that the proffered evidence is what it appears to be. Once that prima facie case is established, the evidence is admitted and the ultimate question is decided by the jury." *Brown v. State*, 332 Ga. App. 635, 639 (2) (774 SE2d 708) (2015) (citations and punctuation omitted). Accord *Smith v. State*, 300 Ga. 538, 541 (2) (b) (796 SE2d 666) (2017).

The state presented evidence sufficient to make out a prima facie case that Irving wrote the letters. Ezell testified that he believed Irving had written the letters because he recognized Irving's handwriting and because the content of the letters and the circumstances surrounding his receipt of them in the jail indicated to him that they were from Irving. The authenticity of a document may be established, among other ways, by "[t]estimony of a witness with knowledge that a matter is what it claimed

9

to be," OCGA § 24-9-901 (b) (1), by "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation," OCGA § 24-9-901 (b) (2), and by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." OCGA § 24-9-901 (b) (4). See *Smith*, 300 Ga. at 540-541 (2) (b). Given Ezell's testimony, the trial court did not abuse his discretion in admitting the letters into evidence. Id. at 541 (2) (b).

3. *Alleged discovery violations.*

Irving argues that the trial court should have excluded certain evidence because the state violated requirements to provide the evidence to him under Georgia's statutory reciprocal discovery rules and *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963). He asserts that two categories of evidence should have been excluded: the testimony of Blackwell's former girlfriend, because the state failed to provide him a recording of that witness's entire interview with law enforcement; and evidence of a bench warrant against Irving, because the state did not provide it to him until after the trial had begun. As detailed below, we find no error in the trial court's rulings on this evidence.

(a) *Statutory reciprocal discovery rules*.

Under Georgia's statutory reciprocal discovery rules, OCGA §§ 17-16-1 et seq., the state can face sanctions, including the exclusion of evidence, for failing to provide the defendant with access to evidence in its possession, custody, or control. Among other things, the reciprocal discovery rules require production of certain witness statements, OCGA § 17-16-7, and certain documents, OCGA § 17-16-4 (a) (3) (A). To obtain the harsh sanction of exclusion of evidence, Irving must show that the state violated these rules in bad faith. *Cushenberry v. State*, 300 Ga. 190, 194 (2) (a) (794 SE2d 165) (2016); *Clay v. State*, 290 Ga. 822, 841 (5) (b) (724 SE2d 620) (2012). We review the trial court's ruling on the issue for abuse of discretion. See *Jones v. State*, 290 Ga. 576, 578 (2) (722 SE2d 853) (2012). We find no such abuse, because the record does not compel a finding by the trial court that the state failed to promptly provide Irving with evidence that was in its possession, custody, or control. See generally OCGA § 17-16-1 (1) (item is within possession, custody, or control of state when it "is within the possession, custody, or control of the prosecuting attorney or any law enforcement agency involved in the investigation of the case being prosecuted").

As to the witness interview, the record does not compel a finding that a recording of the entire interview ever existed. Instead, the record shows that the state

11

provided Irving with a recording of a brief portion of the witness's interview and represented to the trial court that no other portion of that interview was recorded, apparently due to an equipment malfunction. The trial court accepted the state's representation. Although Irving argues that the trial court should not have credited the representation, "in the absence of anything but speculation to the contrary, we cannot say that the court's finding that there was no [recording of the entire witness interview] is clearly erroneous." *DeVaughn v. State*, 296 Ga. 475, 481 (5) (769 SE2d 70) (2015).

As to Irving's bench warrant, the state represented that it had obtained that document from public records after the trial had begun. Pretermitting whether the reciprocal discovery rules apply to this document at all, see *Gonzales v. State*, 286 Ga. App. 821, 824 (2) (650 SE2d 401) (2007) (physical precedent only) ("the Criminal Procedure Discovery Act was not intended to provide sanctions for the failure to provide public information to which [appellant] already had access"), OCGA § 17-16-4 (c) provides that

> [i]f . . . during trial a party discovers additional evidence or material
> previously requested or ordered which is subject to discovery or
> inspection under this article, such party shall promptly notify the other

party of the existence of the additional evidence or material and make this additional evidence or material available as provided in this article.

The record shows that the state presented a copy of the bench warrant to Irving's trial counsel and the court on the same day that it obtained the document from the public records. The trial court gave Irving's counsel the opportunity to review the document overnight. Under these circumstances, the trial court did not abuse his discretion in finding that the statutory requirements were met and in declining to exclude the evidence. See *Cushenberry*, 300 Ga. at 193-194 (2) (a); *Goggins v. State*, 330 Ga. App. 350, 355 (2) (767 SE2d 753) (2014); *Mallory v. State*, 306 Ga. App. 684, 686-687 (1) (703 SE2d 120) (2010). We find no merit in Irving's suggestion that the state should have realized the relevance of the bench warrant evidence and obtained that evidence earlier, because the state was not required to affirmatively seek out the evidence. See *Johnson v. State*, 244 Ga. 295, 298 (7) (260 SE2d 23) (1979); *Jackson v. State*, 145 Ga. App. 526, 527 (1) (244 SE2d 49) (1978).

(b) *Brady rule.*

Although Irving asserts a violation of the *Brady* rule in his appellate briefs he offers no argument separate from his argument for statutory discovery violations. And we find no *Brady* violation.

Under the rule in *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U. S. at 87. To demonstrate a violation of this rule, Irving had the "burden of showing that (1) the [s]tate possessed information favorable to [him]; (2) [he] did not possess the evidence nor could he obtain it with due diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed." *Watkins v. State*, 276 Ga. 578, 583 (4) (581 SE2d 23) (2003). As discussed above in connection with the statutory claims, Irving has not shown that the state suppressed evidence in its possession. He also offers no explanation, or supporting citation to authority, for how either category of challenged evidence was favorable to him, and mere speculation as to the exculpatory or impeaching nature of the evidence is insufficient. See *Vega v. State*, 285 Ga. 32, 33-34 (2) (673 SE2d 223) (2009); *State v. Brown*, 333 Ga. App. 643, 651 (2) n. 19 (777 SE2d 27) (2015). So he has not shown error by the trial court.

4. *Motion to dismiss juror.*

14

Irving argues that the trial court erred in denying his motion to remove a juror for cause during the course of the trial after that juror asked a bailiff whether Irving and his co-defendant, Blackwell, were in jail and expressed a concern for her safety. But when she was questioned about that concern by the trial court and counsel, the juror stated that she understood the presumption of innocence, that she had not yet made up her mind about the case, that she would not reach a decision about the case until she heard all of the evidence and the charge of the court, and that she remained fair and impartial. The trial court cited these assertions from the juror in denying Irving's motion.

Whether to dismiss the juror and replace her with an alternate was a matter within the trial court's discretion. *Prince v. State*, 277 Ga. 230, 236 (4) (587 SE2d 637) (2003). See generally OCGA § 15-12-172 (authorizing trial court to replace juror who had become incapacitated for, among other reasons, inability to perform duty). Given the juror's unequivocal statements that she could consider the evidence presented and the law as charged to reach her decision in the case and that her expressed concerns for safety did not affect her ability to be fair and impartial, the trial court did not abuse his discretion in retaining the juror. See *Prince*, supra; *Murray v. State*, 328 Ga. App. 192, 195-196 (4) (761 SE2d 590) (2014).

15

5. *Ruling on motion for new trial.*

Irving sought a new trial, among other reasons, based on the general grounds embodied in OCGA §§ 5-5-20 (verdict contrary to evidence) and 5-5-21 (verdict against weight of evidence). He argues that the trial court erred in denying his motion for new trial because the trial court "failed to exercise [his] discretion and weigh the evidence in ruling on the merits of the claims," as a trial court has the duty to do when faced with a motion for new trial based on the general grounds. *Perdue v. State*, 298 Ga. 841, 843 (2) (785 SE2d 291) (2016). In his order denying the motion, the trial court acknowledged Irving's general-grounds arguments and held: "After having read and considered Defendant's Amended Motion for New trial, all argument and evidence of the record, and the applicable law, the Court **DENIES** the motion on each and every ground." "Nothing in this order indicates that the trial court failed to perform [his] duty to exercise [his] discretion and weigh the evidence in [his] consideration of the general grounds. The court did not state the incorrect standard in [his] order, and nothing in the record indicates that the court was unaware of [his] responsibility." *Butts v. State*, 297 Ga. 766, 772 (3) (778 SE2d 205) (2015) (citation and punctuation omitted). Although the trial court did not explain his reasoning in the

order, Irving points to no authority requiring the trial court to do so, and we know of none. This claim of error is meritless. See *Butts*, supra.

6. *Merger.*

Irving argues that the trial court erred in failing to merge his aggravated assault convictions with his armed robbery conviction for purposes of sentencing. The state, to its credit, concedes this error as to one of the aggravated assault convictions and offers no argument in response to this claim of error as to the other aggravated assault convictions. We agree with Irving that all of the aggravated assault convictions should merge into the armed robbery conviction. All of the aggravated assault convictions were based on Irving's commission of an assault with a deadly weapon,

> [a]nd as to whether aggravated assault with a deadly weapon merges with armed robbery, [our] Supreme Court has held that aggravated assault with a deadly weapon does not require proof of a fact that armed robbery does not. Indeed, the Supreme Court has concluded that the assault requirement of aggravated assault is the equivalent of the use of an offensive weapon of armed robbery, and that the deadly weapon requirement of this form of aggravated assault is the equivalent of the offensive weapon requirement of armed robbery. Thus, there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery.

17

*Morris v. State*, 340 Ga. App. 295, 313-314 (7) (797 SE2d 207) (2017) (citations and punctuation omitted). See OCGA § 16-5-21 (b) (2) (describing offense of aggravated assault with a deadly weapon); OCGA § 16-8-41 (a) (describing offense of armed robbery). So all of Irving's convictions for aggravated assault should have merged with his conviction for armed robbery. *Morris*, supra. His "conviction[s] and sentence for aggravated assault must be vacated and the case remanded to the trial court for resentencing." Id. at 314 (7).

*Judgment affirmed in part and vacated in part, and case remanded with direction. McMillian, P.J., and Senior Appellate Judge Herbert E. Phipps, concur.*