307 Ga. 770
FINAL COPY

S19A1570.  JACKSON v. THE STATE.

WARREN, Justice.

Jonathan Jackson was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of DeAngelo Head.[1]  On appeal, Jackson contends only that the evidence was insufficient to sustain his convictions.  We disagree and affirm.

---

[1] The crimes were committed on March 30, 2013.  On September 24, 2013, a Fulton County grand jury indicted Jackson for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.  The indictment also charged Jackson and Karseen King with participation in criminal street gang activity; King alone was indicted for hindering apprehension of a criminal.  Jackson was tried separately before a jury from February 18 to 24, 2015.  The two counts involving King were nolle prossed at the State's request and were not submitted to the jury, and the jury found Jackson guilty of the remaining four counts.  On March 11, 2015, the trial court sentenced Jackson to life in prison for malice murder and a consecutive term of five years for the firearm offense.  The guilty verdict for felony murder was vacated by operation of law, and the aggravated-assault count was merged into the malice murder conviction.  Jackson filed a timely motion for new trial on March 27, 2015, which was later amended through new counsel on January 29, 2018.  The amended motion was denied on June 7, 2018, and Jackson filed a timely notice of appeal on July 5, 2018, which was amended on August 8, 2018, and again on October 22, 2018.  The case was docketed in this Court for the August 2019 term and submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at Jackson's trial showed that on March 30, 2013, approximately 250 members of the East Point community were gathered in a parking lot called Bayard Plaza for a community Easter event. The victim, DeAngelo Head, attended the gathering, as did Jackson. Because of the size of the event, Officer Roger Frazier reported to Bayard Plaza to ensure that the gathering remained under control. During his time there, Officer Frazier pulled over a motorcyclist for not wearing a helmet and gave him a verbal warning. Officer Frazier then received another call that took him away from Bayard Plaza.

After Officer Frazier left, there was "loud talking" among several attendees. Jackson stated, "You know I'll shoot one of these n****rs in their face." Head responded, "What you mean? You ain't going to shoot nobody in their mother-f***ing face." Head then hit Jackson. Jackson stumbled from the hit, drew a handgun, and shot Head twice in the chest. In response to Jackson shooting, other party attendees drew guns and also began firing. After the shooting

2

stopped, more than 50 cartridges corresponding to at least six different weapons were recovered.

Officer Frazier was the first to respond to the scene. He found Head lying in the lap of an attendee. After calling paramedics, Officer Frazier conducted a preliminary investigation. During that time, he heard some people say that "the guy you stopped on the bike, that was the shooter." Officer Frazier and a detective also tried interviewing the injured Head and the people surrounding him, but Head was unable to talk, and other people at the scene were reluctant to talk to law enforcement. Head later died at the hospital. The cause of death was two gunshot wounds to the torso.

A few days after the shooting, witnesses began speaking to police. A friend of Head's sister gave her an Instagram photo that she gave to the police. After officers could not identify the person in the photo, they released it to the media, which resulted in an anonymous tip that identified Jackson. Police also showed the same Instagram photo, as well as Instagram photos of other people, to Remarcus Brown, who had been standing within five feet of the

3

shooting. Brown identified Jackson as the shooter from the Instagram photos and, about a month later, from a photographic lineup. In addition, someone else who was not a police officer showed an Instagram photo to another eyewitness, Grady Taylor, who then met with police and identified Jackson as the shooter.[2] A few weeks after the shooting, co-indictee Karseen King identified the shooter as "Jermaine," but also told the police that the man who shot Head was a "dark-skinned black man with thick lips known as 'Roo,'" and about a month after Jackson was arrested, he referred to himself as "Roo" in a recorded jailhouse conversation with King. And at trial, both Brown and Taylor identified Jackson in the courtroom as the person they saw shoot Head.

Jackson first argues that there was a lack of physical evidence — such as a murder weapon or DNA, fingerprint, or video identification evidence — connecting him to the crimes. The State, however, "'was not required to produce any physical evidence,' video

---

[2] It is not clear from the record before us whether this was a different Instagram photo than the one shown to Brown.

or otherwise." *Roberts v. State*, 305 Ga. 257, 259 (824 SE2d 326) (2019) (quoting *Jackson v. State*, 301 Ga. 866, 867 (804 SE2d 367) (2017)). "As for the absence of the murder weapon, 'the State need not admit into evidence the weapon used by the defendant in order for the defendant to be found guilty of the crime involving the weapon.'" *Brown v. State*, 301 Ga. 728, 731 (804 SE2d 16) (2017) (citation omitted). "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (796 SE2d 704) (2017). And there was substantial direct evidence in this case in the form of testimony from multiple eyewitnesses identifying Jackson as the perpetrator.[3] See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. . . .").

---

[3] For this reason, the following cases on which Jackson relies are readily distinguishable because (among other reasons) they involve only circumstantial evidence that was not sufficient to show that the defendant was a party to the crimes under Georgia law: *Tenner v. Wallace*, 615 FSupp. 40 (S.D. Ga. 1985); *Moore v. State*, 255 Ga. 519, 520-521 (340 SE2d 888) (1986); *Johnson v. State*, 277 Ga. App. 499, 504-505 (627 SE2d 116) (2006).

Jackson next argues that certain statements — ones that bystanders made at the crime scene and that King made later to police — implicated people other than him in the shooting. But questions about the possibility of another perpetrator generally are for the jury to decide, regardless of whether the case is predicated on direct or on circumstantial evidence. See *Brown*, 301 Ga. at 731; *Grissom v. State*, 296 Ga. 406, 408-409 (768 SE2d 494) (2015); *Nichols v. State*, 292 Ga. 290, 290-291 (736 SE2d 407) (2013).

Finally, Jackson argues that certain social media pictures admitted at trial improperly influenced the eyewitnesses before trial and tainted their identifications of him before and during trial.[4] But showing witnesses photographs of a defendant during the investigation of a crime "only affect[s] the credibility of the witnesses and the weight to be given to their testimony, which are matters for the jury." *Glass v. State*, 289 Ga. 542, 543 (712 SE2d 851) (2011) (citation and punctuation omitted) (holding that the evidence was

---

[4] Jackson does not, however, argue that the photographs or the eyewitness identifications of him were inadmissible as a matter of evidence.

6

sufficient to sustain the defendant's convictions for murder and other offenses, in part because "the placement of [the defendant's] picture around the community with an alert to be on the lookout" affected only the weight and credibility of the eyewitness testimony). See also *Roberts*, 305 Ga. at 259 ("[I]t was for the jury to determine the credibility of the eyewitnesses.") (citation and punctuation omitted).

Accordingly, we conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Jackson guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 27, 2020.
Murder. Fulton Superior Court. Before Judge Russell.
*Juwayn Haddad*, for appellant.

7

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Dustin J. Lee, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.