NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 9, 2022

S22A0432. CARTER v. THE STATE.

BETHEL, Justice.

After a jury trial in June 2016, Woodrow Carter was convicted of malice murder in connection with the death of James Mills. He appeals, contending that the evidence was insufficient to support his conviction and that the jury should have had the option of convicting him of concealing the death of another.[1] We disagree and affirm.

---

[1] The crimes occurred on July 20, 2001. On September 13, 2010, a Richmond County grand jury jointly indicted Carter, Marcus McCladdie, Derrick Robinson, and Marquise Redfield for the malice murder of James Mills (Count 1) and felony murder based on the aggravated assault of Mills (Count 2). Redfield pled guilty to voluntary manslaughter, and McCladdie pled guilty to concealing the death of another. Their cases are not part of this appeal. It is unclear from the record how Robinson's case was resolved. At the conclusion of a trial held on June 8, 2016, the jury found Carter guilty of both charges. The trial court sentenced Carter to serve life in prison on Count 1. The trial court purported to merge Count 2 with Count 1, but Count 2 was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Carter timely filed a motion for new trial on June 17, 2016, which he later amended through new counsel. After a hearing, the trial court denied

1.   Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Carter, Marcus McCladdie, Derrick Robinson, and Marquise Redfield often spent time together dealing cocaine. On July 20, 2001, Carter, Robinson, and Redfield picked up McCladdie and drove to Robinson's cousin's apartment in Augusta where they regularly gathered to socialize, relax, and prepare drugs. Robinson gave James Mills directions to the apartment, and Mills arrived sometime later with approximately $50,000 to $75,000 worth of cocaine. Redfield testified that he and Robinson planned to murder Mills because they believed he was "coming short on the drugs" and "overtaxing."

McCladdie testified that when Mills knocked on the door to the apartment, Carter ran to the bathroom and Redfield ran upstairs while McCladdie stayed where he was. Robinson opened the door and greeted Mills, and then Carter and Redfield emerged from hiding. McCladdie testified that Carter and the others were acting

the motion, as amended, on August 16, 2021. Carter filed a timely notice of appeal. The case was docketed in this Court for the April 2022 term and was submitted for a decision on the briefs.

"like they knew what to do." Redfield pointed his gun at Mills, and he, Robinson, and Carter then took Mills into the kitchen. Redfield testified that McCladdie bound Mills with duct tape, and that he and McCladdie strangled Mills to death with a cord from a clothes iron. McCladdie told the police that it was Redfield and Robinson who strangled Mills, though he testified at trial that Redfield was the one who strangled Mills.

Mills's body was rolled up inside a comforter, and Carter, McCladdie, Robinson, and Redfield then loaded Mills's body into Mills's vehicle. Redfield drove Mills's vehicle to Carter's mobile home in South Carolina, with Carter, Robinson, and McCladdie following in Robinson's car. In Carter's backyard, a large hole had been dug. It contained an empty refrigerator or freezer, and a backhoe sat nearby. Mills's body was placed into the appliance in the hole and buried there. The men divided the cocaine Mills had brought with him among themselves, with Carter receiving a couple of ounces.

In 2008, Mills's vehicle was discovered. Two years later,

3

Redfield told law enforcement that he knew where Mills was buried. Police then recovered Mills's remains from Carter's backyard. Police interviewed Carter, who initially denied any knowledge of the murder before admitting he had been present for the murder and burial, though he claimed that Robinson, Redfield, and McCladdie had been the ones who committed the crimes. Carter admitted in the interview that he received a couple of ounces of Mills's cocaine in exchange for his silence.[2]

2. Carter argues that the evidence presented at trial was insufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), to support his conviction for malice murder because it did not show that he was a party to Mills's death by strangulation.[3] He also argues that the evidence was insufficient as a matter of Georgia law because the testimony of one of the

---

[2] In contrast to the testimony of McCladdie, Redfield testified that Carter did not participate in the murder and that Carter was threatened in order to coerce him into allowing the body to be buried at his home in South Carolina.

[3] While Carter challenges the sufficiency of the evidence to sustain both guilty verdicts against him, his challenge to the felony murder count is moot because that count was vacated by operation of law. See *Collett v. State*, 305 Ga. 853, 855 (1) n.2 (828 SE2d 362) (2019).

accomplices implicating him in the crime was not corroborated. We disagree with both contentions.

(a) Carter first argues that the evidence was insufficient because there was no evidence that he was a party to Mills's murder.

> When evaluating a challenge to the sufficiency of the evidence [as a matter of constitutional due process], we view all of the evidence presented at trial in the light most favorable to the verdict[s] and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted.

*Jones v. State*, 304 Ga. 594, 598 (2) (820 SE2d 696) (2018) (citing *Jackson*, 443 U. S. at 318–319 (III) (B)). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence." (Citations and punctuation omitted.) *Harris v. State*, 313 Ga. 225, 229 (2) (869 SE2d 461) (2022).

OCGA § 16-2-20 (b) provides that

> [a] person is concerned in the commission of a crime only if he: (1) [d]irectly commits the crime; (2) [i]ntentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3)

5

[i]ntentionally aids or abets in the commission of the crime; or (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.

Moreover, "[w]hile proof of a shared criminal intent with the actual perpetrator is necessary to establish that one is a party to the crime, shared criminal intent may be inferred from the person's conduct before, during, and after the crime." (Citation and punctuation omitted.) *Bowen v. State*, 299 Ga. 875, 877 (1) (792 SE2d 691) (2016). See also *Powell v. State*, 307 Ga. 96, 99 (1) (834 SE2d 822) (2019).

Carter argues that the evidence here was insufficient because there was no testimony demonstrating that he knew about or participated in the agreement to kill Mills or that he was otherwise a party to the murder. Carter relies on Redfield's testimony that Carter did not participate in the murder and that Redfield threatened him into allowing Mills to be buried in his backyard, which he argues shows that he did not participate willingly. However, McCladdie testified extensively at trial about Carter's involvement immediately prior to, during, and after the murder, and further testified that the attack on Mills appeared to be pre-

6

orchestrated. To the extent McCladdie's testimony conflicts with Redfield's, that inconsistency was for the jury to resolve, and the jury was entitled to disbelieve Redfield's version of events. See *Graves v. State*, 298 Ga. 551, 553 (1) (783 SE2d 891) (2016) ("[I]t is axiomatic that resolving evidentiary conflicts and assessing witness credibility are within the exclusive province of the jury." (citing *Hampton v. State*, 272 Ga. 284 (1) (527 SE2d 872) (2000))). Thus, despite conflicts in the evidence regarding Carter's role in the killing, when viewed in the light most favorable to the jury's verdicts, the evidence was sufficient for the jury to find Carter guilty beyond a reasonable doubt as a party to the crime of malice murder. See *Jackson*, 443 U. S. at 319 (III) (B); *Eckman v. State*, 274 Ga. 63, 65 (1) (548 SE2d 310) (2001) (concluding that the evidence was sufficient to find that defendant was a party to the crime where, inter alia, she was present when the crimes were committed, fled the crime scene with her companions, and "used the fruits" of the crimes).

(b) Carter also argues that McCladdie was an accomplice to the

murder and that his testimony was not sufficiently corroborated.

OCGA § 24-14-8 provides in pertinent part:

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . .

Thus, when the only witness to testify at trial is an accomplice, corroborating evidence is required to support a guilty verdict. See *Edwards v. State*, 299 Ga. 20, 22 (1) (785 SE2d 869) (2016). Whether accomplice testimony has been sufficiently corroborated is a question for the jury, and even slight corroborating evidence of a defendant's participation in a crime is sufficient. See *Raines v. State*, 304 Ga. 582, 588 (2) (a) (820 SE2d 679) (2018) (citing *Parks v. State*, 302 Ga. 345 (806 SE2d 529) (2017)).

Here, although Carter argues that McCladdie's testimony about Carter's involvement in the murder was not corroborated, this argument fails. In addition to McCladdie's testimony about Carter's participation, Redfield testified that Carter was present in the

8

apartment during the murder and that after Mills's body was loaded into Mills's vehicle, Carter followed Redfield in a separate vehicle to Carter's house. In an interview with the police that was played for the jury, Carter initially denied any knowledge of the murder before admitting that he was with Robinson, Redfield, and McCladdie during the murder and burial. Carter did not mention being threatened at any point – which undercut Redfield's testimony on this point – and he admitted receiving a couple of ounces of Mills's cocaine in exchange for his silence about the crimes. And Carter concealed Mills's body in his backyard for several years after the murder. Accordingly, Redfield's testimony, Carter's statements to the police, and the location of Mills's body provided sufficient corroboration of McCladdie's testimony regarding Carter's participation in the murder. See *Sams v. State*, ___ Ga. ___ (__ SE2d __), 2022 WL 2349867 (Case No. S22A0305, decided June 30, 2022) (holding testimony of second accomplice, in addition to non-accomplice evidence, was sufficient to corroborate accomplice testimony); *Floyd v. State*, 272 Ga. 65, 66 (1) (525 SE2d 683) (2000)

9

(defendant's own statements served to corroborate accomplice testimony).

3. Carter next argues that the trial court should have granted his motion for new trial in order to "correct the manifest injustice of the District Attorney allowing the actual murderer to plead guilty to concealing the death of another . . . while disallowing [Carter's] request to allow the jury to have the verdict option of finding [Carter] guilty of concealing the death of another." We disagree that this enumeration presents any grounds for the reversal of the trial court's denial of Carter's motion for new trial.

Carter fails to explain how the jury finding him guilty of another crime – that is, concealing the death of another – would have affected his guilty verdict on the murder count. The crime of concealing a death, as defined in OCGA § 16-10-31 is distinct from malice murder, and Carter concedes that it is not a lesser-included offense. The two offenses have entirely different elements and require proof of different facts. Compare OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with

malice aforethought, either express or implied, causes the death of another human being.") with OCGA § 16-10-31 ("A person who, by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed is guilty of a felony. . . ."). Cf. *Chapman v. State*, 280 Ga. 560, 561 (4) (629 SE2d 220) (2006) (noting that the crime of concealing a death is not included in felony murder). The trial court noted the same when it denied the requested charge during the charge conference. Accordingly, we see no error in the trial court's refusal to give the instruction, and Carter's argument regarding the injustice or unfairness of this outcome fails to set forth a sound legal basis for deciding otherwise. Cf. *State v. Wooten*, 273 Ga. 529, 531 (2) (543 SE2d 721) (2001) ("In the district attorney's role as an administrator of justice, he or she has broad discretion in making decisions prior to trial about who to prosecute, what charges to bring, and which sentence to seek[.]" (footnotes omitted)).

*Judgment affirmed. All the Justices concur.*