NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia


Decided: October 25, 2022


S22A0801.  WILLIS v. THE STATE.


PINSON, Justice.

Stephen Willis was convicted along with four co-defendants of crimes arising from the shooting death of Nicholas Hagood.[1] On

---

[1] The crimes occurred on April 16, 2014. On July 18, 2014, a Fulton County grand jury indicted Willis and four co-defendants—Tavius Bates, Demetrius Fortson, Octavious Jordan, and Jeremy Southern—on eight counts each: malice murder, armed robbery, felony murder predicated on armed robbery, hijacking a motor vehicle, felony murder predicated on hijacking a motor vehicle, aggravated assault, felony murder predicated on aggravated assault, and possessing a firearm during the commission of a felony. Willis alone was also indicted for possession of a firearm by a convicted felon and felony murder predicated on that charge. The defendants were tried together before a jury from August 28 to September 8, 2017. The jury found Willis not guilty of malice murder but guilty of all other counts. The jury found Southern guilty of all counts and found Fortson, Bates, and Jordan not guilty of malice murder but guilty of the remaining counts. We affirmed Fortson's convictions on appeal. See *Fortson v. State*, 313 Ga. 203 (869 SE2d 432) (2022). Willis was sentenced to life in prison for felony murder predicated on armed robbery, 20 years in prison for hijacking a motor vehicle, 5 years in prison for possessing a firearm as a convicted felon, and 5 years in prison suspended for possessing a firearm during the commission of a felony, all to run concurrently. The aggravated assault and armed robbery counts merged for sentencing purposes with the felony murder count predicated on armed robbery, and the other

appeal, Willis contends that (1) the evidence was insufficient to sustain his convictions, (2) the trial court plainly erred by failing to instruct the jury that the testimony of an accomplice requires corroboration, and (3) his trial counsel was ineffective for allowing an exhibit to be introduced that included information about his prior encounters with law enforcement, not requesting a limiting instruction as to how the jury could consider that felony conviction, and failing to move to suppress the search warrant that yielded Willis's phone records.

We conclude that the evidence was sufficient to support Willis's convictions. Further, the failure to give an accomplice-corroboration jury instruction was not plain error, because even assuming the instruction should have been given, the failure to give it was not likely to have affected the outcome of the trial in light of the

_____

felony murder sentences were vacated by operation of law. On September 13, 2017, Willis filed a timely motion for new trial, which he amended twice through new counsel. After a hearing, the trial court denied the motion for new trial, as amended, on January 28, 2022. On February 1, 2022, Willis filed a timely notice of appeal. The case was docketed to the April 2022 term of this Court and submitted for a decision on the briefs.

substantial evidence against Willis. Finally, Willis failed to establish that he received ineffective assistance of counsel at trial. He has not shown that he was prejudiced by the introduction of the exhibit that showed his prior criminal history, and his counsel was not deficient for failing to move to suppress the search warrant because the warrant was supported by probable cause: the warrant application relied in part on a statement from a named informant that was against the informant's penal interest. So we affirm.

1. The evidence at trial showed the following. On April 16, 2014, just after 12:30 p.m., Rayshon Smith was robbed at gunpoint. Smith was outside his cousins' apartment building in Austell, in Cobb County, when he noticed a car driving past slowly. The car was a silver or gray Ford Taurus with tinted windows, and Smith could see four men inside. Smith then noticed two men walking towards him. One of them came right up to Smith, pointed a gun at him, and went through his pockets while looking him in the eye. The man took Smith's wallet, phone, and keys. The other man also had a gun but did not come as close.

3

After the men left, Smith went into the apartment building and called the police. He gave the police the number of his phone that was stolen. Later, Smith identified Willis's co-defendant Jeremy Southern in a photo array as the man who had been closest to him during the robbery.

About a half hour later, at around 1:00 p.m., Joseph James was at home in his apartment in Fulton County, not far from where Smith was robbed. James was looking out the window into the parking lot when he noticed two cars pulling up. One of the cars, which was driven by Hagood, pulled into a parking space. The other car wedged behind it. When Hagood got out of the car, he seemed "out of place" and "slightly disoriented." James saw Hagood and a man with dreadlocks standing next to the car that Hagood had been driving, while a third man remained in that car. Four or five men were in the other car. As James watched, Hagood appeared to check his pockets, and then appeared to mouth "I don't have anything" or "I don't have it" to the man with dreadlocks. The man with dreadlocks appeared to "check" Hagood, "like trying to figure out

4

does he have something." At that point, one of the men from the second car got out, holding a gun, and moved toward Hagood and the man with dreadlocks. Hagood tried to run. James heard a gunshot. The medical examiner testified at trial that Hagood was killed by a gunshot wound to the back.

James called 911 at 1:16 p.m. Later, when shown photo arrays, James identified Southern as the man with the gun and another of Willis's co-defendants, Tavius Bates, as the man with dreadlocks who had been speaking to Hagood.[2]

Detective Scott Demeester, the lead investigator on the case, arrived at the scene at around 1:45 p.m. Detective Demeester contacted Hagood's wife, who told him that Hagood normally would have a cell phone and a car, neither of which was found at the crime scene. Hagood's wife gave the detective Hagood's cell-phone number and the tag number for his white Toyota Corolla. Detective Demeester put out alerts for both the phone and the car.

---

[2] At trial, James admitted that he was "troubled" when he identified Bates in the photo array, because the photo of Bates in the array did not show him with a dreadlocks hairstyle. See *Fortson*, 313 Ga. at 210 (1).

At the murder scene, police found a wallet and set of keys belonging to Smith, who had recently been robbed nearby. Detective Demeester contacted Smith and learned that his cell phone had been stolen in the robbery. The detective then subpoenaed the phone records associated with Smith's stolen phone, as well as those associated with Hagood's missing phone.

The records from Hagood's phone showed that after the shooting, at 1:29 p.m., someone sent a text message to Hagood's phone. But that message was not received until 3:10 p.m., indicating that the phone was powered off or otherwise disconnected in the interim. When Hagood's phone finally received the message, it "pinged" off a cell tower in the area of an apartment complex on Kelly Lake Road in Decatur. The aunt of one of Willis's co-defendants, Octavius Jordan, lived in that apartment complex. Jordan himself was living at a nearby hotel, and Southern lived in the area too. A maintenance man from the Kelly Lake Road apartment complex testified that he had seen Hagood's white Toyota Corolla and the defendants' silver Ford Taurus parked at that

6

apartment complex later in the week, after the shooting. Hagood's car was eventually recovered in the same area.

The records from Smith's cell phone showed that someone used it several hours after it was stolen to call Metro PCS customer service to unlock it. After it was unlocked, the phone was used to place and receive calls and text messages to and from people the phone had never been used to contact before it was stolen. The new contacts included Jordan's girlfriend, Willis, Southern, and a phone number belonging to the mother of the fourth co-defendant, Demetrius Fortson, who often used his mother's phone. Police searched the phone of another of the new contacts in Smith's phone, Dionte Wooten, and found that Smith's number was saved in Wooten's phone under Jordan's nickname, "Tay Tay."

Jordan and Bates were arrested and interviewed. Portions of their statements were played for the jury. In Jordan's interview, he admitted that he was present at the armed robbery of Smith, that he took Smith's phone (and later sold it), and that he then drove to another location where a "white man" was robbed. Bates, in his

7

statement, admitted that he was present at both the robbery of Smith and the shooting of Hagood. Neither Jordan nor Bates mentioned Willis or any other co-defendant in the redacted portions of their statements that were played at trial.

In the portion of Jordan's interview that the jury did not hear, Jordan identified Willis and the other co-defendants. Using that information, Detective Demeester obtained a search warrant for the cell-phone records of Willis, Southern, Bates, and Jordan, as well as of Fortson's mother. From those records, detectives put together a timeline of the defendants' whereabouts and phone activities on the day of the crimes.

The cell-phone evidence showed the following. On the morning of the crimes, Willis, Jordan, and Southern were in contact with each other. Jordan and Southern started out in the area of Decatur where they both lived, and Willis started out somewhere west of Stone Mountain. Shortly after 10:30 a.m., Jordan and Southern drove north on I-285 toward the Stone Mountain Highway, then east on the highway toward Stone Mountain. Jordan and Southern called

8

Willis at 10:48 a.m. and 10:59 a.m., respectively; all three phones pinged off the same cell tower near Stone Mountain. A little later, Southern and Jordan drove west on the Stone Mountain Highway and south on I-285, heading back the way they had come. (There was no testimony about Willis's phone activity during that period.) At 12:05 p.m., Southern called Fortson's mother's phone while Southern was approaching Fortson's home in southeast Atlanta.

A short time later, just after Smith was robbed, Jordan received a call at 12:37 p.m., and Willis made and received calls at 12:43 p.m. and 12:47 p.m., all in the area of the robbery. Southern's phone pinged off a cell tower in the same area at the same time. Likewise, minutes before Hagood was killed, Willis, Southern, and Jordan all made calls near the murder scene.

The phones went silent for a time after the murder. Then at 1:47 p.m., Willis made a call near Fortson's home. The other four defendants' phones all pinged off the same cell tower around that time. At 2:11 p.m., Southern called Willis from near Southern's home. All five defendants' phones pinged off cell towers in the same

9

area that afternoon—as did Hagood's stolen phone, at 3:10 p.m.

Detective Demeester testified that in the six-week period for which he reviewed Willis's phone records, the day of the crime was the only time Willis's phone pinged near either Fortson's home or Jordan's and Southern's homes.

Willis was arrested at the home of his girlfriend in Austell. He was found hiding in a bedroom closet. Police seized his cell phone; Willis later denied having the cell-phone number that was associated with that phone. He also denied knowing Jordan, although one of the contacts in his phone was listed under Jordan's nickname with the phone number of Jordan's girlfriend.

None of the defendants testified at trial.

2. Willis contends that the evidence was not sufficient to sustain his convictions. Relying on OCGA § 24-14-6, he argues that the evidence that he was a party to the crimes, which was entirely circumstantial, did not exclude all reasonable hypotheses other than

his guilt.[3]

A conviction can rest on circumstantial evidence alone if that evidence "exclude[s] every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. See *Davenport v. State*, 309 Ga. 385, 388 (1) (846 SE2d 83) (2020). Not every hypothesis is a "reasonable" one, and the evidence "need not exclude every *conceivable* inference or hypothesis," only the reasonable ones. *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019) (citation and punctuation omitted). The questions whether any alternative hypotheses are reasonable and whether the circumstantial evidence excludes any such hypotheses are for the jury. Id. See also *Merritt v. State*, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009). And we will not disturb the jury's findings on those questions unless they are "insupportable as a matter of law." *Graves*, 306 Ga. at 487 (1) (citation and punctuation omitted).

---

[3] Although Willis cites *Jackson v. Virginia*, 403 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), he makes no argument about the constitutional sufficiency of the evidence, relying instead solely on his arguments under OCGA § 24-14-6.

A jury may find a defendant guilty beyond a reasonable doubt if the evidence shows either that he directly committed the crime or that he was a "party thereto." See OCGA § 16-2-20 (a). A person is a party to the crime if he aids or abets in its commission or if he "advises, encourages, hires, counsels, or procures another" to commit it. Id. at (b) (4). See also *Carter v. State*, __ Ga. __, __ (2) (a) (877 SE2d 170) (2022). And although the defendant's mere presence at the scene is not enough to convict him as a party to the crime, the jury may infer his criminal intent from his "presence, companionship, and conduct before, during, and after the offense." *Jones v. State*, 314 Ga. 214, 231-32 (3) (875 SE2d 737) (2022) (citation and punctuation omitted).

Here, there was sufficient evidence for the jury to find both that Willis's co-defendants directly committed the crimes and that Willis was guilty as a party to the crimes. To begin with, as Willis concedes, there was direct evidence that his co-defendants committed the crimes. A witness to the murder, James, identified Southern as the shooter and Bates as the second person who confronted Hagood.

Jordan also admitted to his own participation. See *Thrift v. State*, 310 Ga. 499, 502 (1) (852 SE2d 560) (2020) (confessions are direct evidence of guilt); *Jackson v. State*, 307 Ga. 770, 772 (838 SE2d 246) (2020) (eyewitness testimony is direct evidence of guilt). And ample circumstantial evidence corroborated these accounts. After the murder, Hagood's stolen phone pinged in the area where Southern, Bates, and Fortson all lived, and Hagood's stolen car was recovered in the same area. See *Carter v. State*, 305 Ga. 863, 867 (2) (828 SE2d 317) (2019) (circumstantial evidence of guilt included the location of the victim's phone after the victim's death). In addition, there was evidence suggesting that the men who shot Hagood were the same men who had earlier robbed Smith—Smith's stolen wallet and keys were found at the murder scene—and from that inference flowed further evidence implicating the group. Smith identified Southern as one of the robbers, and after the murder, Jordan used Smith's stolen phone and later sold it. See *Eckman v. State*, 274 Ga. 63, 65 (1) (548 SE2d 310) (2001) (circumstantial evidence of guilt included defendant's use of "the fruits of the multi-county crime spree").

13

There was also sufficient evidence from which the jury could find that Willis was part of the group that committed the crimes. Both eyewitnesses, James and Smith, saw at least four men at the respective crime scenes. Willis's cell-phone records offered strong support that he was one of those men. The phone records showed not only that Willis was near the location of both crimes at the time they were committed, but also that he moved around the city with his co-defendants after the crimes, and that he was in communication with them throughout the day. Willis called or texted with Southern and Jordan in the morning as the latter two drove toward Stone Mountain, where Willis started his day. Later, Willis's phone was used in the area where Smith was robbed, and shortly thereafter, it was used again near where Hagood was murdered. Still later, his phone was active near Fortson's home, and then near Southern's and Jordan's homes—as were the phones of all his co-defendants. Detective Demeester testified that the day of the crimes was the only day in a six-week span in which Willis's phone pinged near Fortson's, Southern's, or Jordan's homes. And when Willis was

14

arrested, he denied having the phone number associated with the phone in his possession, and denied knowing Jordan despite evidence to the contrary.

This evidence authorized the jury to reject as unreasonable the hypotheses that Willis urges on appeal—that he was merely present at the scene of Hagood's murder, and that when his phone pinged near the Smith robbery, he was actually at his girlfriend's home nearby. See OCGA § 24-14-6; *Poole v. State*, 312 Ga. 515, 522-23 (863 SE2d 93) (2021). See also *Copeland v. State*, 314 Ga. 44, 46-47 (2) (875 SE2d 636) (2022) (evidence of guilt included cell-site location data that placed defendant at scene of crime and corroborated witness's account). The jury instead could have inferred Willis's criminal intent from his presence at the crime scenes, his companionship and communication with the group before and after the crimes, and his later disavowal of both his own cell-phone number and of knowing Jordan. See *Jones*, 314 Ga. at 232 (3) (citation and punctuation omitted). Compare *Taylor v. State*, 297 Ga. 132, 135 (2) (772 SE2d 630) (2015) (evidence of guilt insufficient

when only corroborating evidence of defendant's participation was testimony of one witness who saw defendant in co-defendant's car some time later). Because the jury's finding was not insupportable as a matter of law, we do not disturb it. *Graves*, 306 Ga. at 487 (1).

3. Willis contends that the trial court erred by failing to give a jury instruction about the statutory requirement of accomplice corroboration. Under OCGA § 24-14-8, "[t]he testimony of a single witness is generally sufficient to establish a fact"; but in a felony case, if "the only witness is an accomplice," then the testimony of that witness "shall not be sufficient" and requires corroboration. The "corroboration requirement applies even when the accomplice does not testify in court, if his statements are admitted through another witness." *Finney v. State*, 311 Ga. 1, 10 (2) (b) (855 SE2d 578) (2021). In Willis's view, the accomplice-corroboration instruction should have been given in light of the out-of-court statements from Jordan and Bates that were played at trial.

(a) The trial court gave several jury instructions that related to the co-defendants' out-of-court statements. First, the court

16

instructed the jury that the testimony of a single witness is enough to establish a fact. Then the trial court began to tell the jury that an "exception" to this rule exists when the witness is an accomplice, in which case the accomplice's testimony must be supported by some other evidence. But the State objected to that charge, arguing that it was an "improper charge for this case," and the trial court agreed, saying, "Strike that. Strike that." Finally, the trial court instructed the jury that it could consider each of the co-defendants' out-of-court statements only against the defendant who had made the statement.

(b)   Willis did not object at trial to the failure to give an accomplice-corroboration instruction, so we review the claim for plain error. See *Harris v. State*, 313 Ga. 872, 879 (3) (874 SE2d 73) (2022). To show plain error, an appellant must show that (1) the alleged error was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which ordinarily means showing that it affected the outcome of the trial. See *Hawkins v. State*, 304 Ga. 299, 302 (3) (818 SE2d 513) (2018). Finally, if those three prongs are satisfied, an appellate

court has the discretion to remedy the error only if the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. at 302 (citation and punctuation omitted).

Pretermitting whether it was error for the trial court not to give an accomplice-corroboration jury instruction in this case, Willis has not shown that the failure to give the instruction likely affected the outcome of his trial. As we recounted in Division 2, ample evidence of Willis's guilt did not come from Jordan's and Bates's statements, including eyewitnesses identifying his co-defendants as the direct perpetrators of the crimes, and cell-phone records placing Willis at the crime scenes and underscoring that he and his co-defendants were in communication with each other and in each other's presence throughout the day. The evidence against him did not rely entirely, or even significantly, on the statements from Jordan and Bates. See *Payne v. State*, 314 Ga. 322, 326 (1) (877 SE2d 202) (2022) (failure to give accomplice-corroboration instruction did not likely affect outcome of trial in light of significant evidence of guilt other than accomplice testimony); *Hawkins*, 304 Ga. at 303 (3)

18

(same). Compare *State v. Johnson*, 305 Ga. 237, 241 (1) (824 SE2d 317) (2019) ("because virtually *all* of the incriminating evidence flowed from [an accomplice], the outcome of the trial court proceedings was 'likely affected' by the trial court's failure to provide an accomplice corroboration instruction") (emphasis added). Indeed, the only portions of Jordan's and Bates's statements that were played at trial made no mention of Willis, and did not connect him to the crimes. Cf. *Pindling v. State*, 311 Ga. 232, 236 (2) (857 SE2d 474) (2021) (statute requires accomplice-corroboration instruction "if there is evidence that could support a finding that a witness was an accomplice to the crime, and that witness provides testimony that directly links the defendant to the crime"). Moreover, the trial court instructed the jury to consider Jordan's and Bates's statements only against the men who made them—Jordan and Bates, respectively— and "[q]ualified jurors under oath are presumed to follow the trial court's instructions." *Holland v. State*, 314 Ga. 181, 192 (3) (b) (875 SE2d 800) (2022) (citation and punctuation omitted). Given the significant other evidence against Willis, and the minimal degree to

19

which Jordan's and Bates's statements implicated him, Willis has not shown that the failure to give an accomplice-corroboration instruction likely affected the outcome of his trial. Without that showing, we find no plain error. See *Hawkins*, 304 Ga. at 302 (3).

4. Willis contends that his trial counsel rendered constitutionally ineffective assistance in a number of ways.

To succeed on a claim of ineffective assistance, a defendant must establish both that his counsel's performance was deficient and that he was prejudiced as a result of that deficient performance. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, a defendant must establish that counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." Id. (citation and punctuation omitted). To overcome the "strong presumption" that counsel performed reasonably, the defendant must show that "no reasonable lawyer would have done what his lawyer did, or would

20

have failed to do what his lawyer did not." Id. (citation omitted). And counsel's decisions about trial tactics and strategy in particular may not form the basis of an ineffectiveness claim unless they were "so patently unreasonable that no competent attorney would have followed such a course." Id. (citation omitted). To establish prejudice, a defendant must establish that there is a "reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. A reasonable probability is a probability "sufficient to undermine confidence in the outcome" of the trial. *Neal v. State,* 313 Ga. 746, 751 (3) (873 SE2d 209) (2022) (citation and punctuation omitted).

If the defendant fails to satisfy either part of the *Strickland* test, his claim fails, and we need not address the other part. *Washington,* 313 Ga. at 773 (3). Finally, when reviewing ineffective-assistance claims, we accept the trial court's factual findings unless clearly erroneous, but we independently apply legal principles to the facts. See *Lyons v. State,* 309 Ga. 15, 25 (8) (843 SE2d 825) (2020).

(a) Willis first contends that trial counsel was ineffective for failing to limit the jury's access to State's Exhibit 115, a certified copy of Willis's 2013 felony conviction (by guilty plea) for possession of cocaine. The State introduced the exhibit to establish that Willis was a previously convicted felon. But the exhibit also showed Willis's misdemeanor convictions from the same incident for possession of marijuana and obstructing a law enforcement officer. The narrative of the incident described Willis jumping off a second-floor balcony to avoid arrest. In addition, the exhibit showed that three days before the cocaine possession incident, Willis had an arrest warrant issued for battery and obstructing a 911 call, and that he had had his bond revoked as a result. Willis argues that counsel should have stipulated to his status as a convicted felon to prevent the jury from seeing the full exhibit.

Even assuming counsel's performance was deficient for the reasons Willis gives, Willis has failed to establish prejudice. A defendant may be prejudiced by the admission of a prior conviction into evidence when the "prior conviction is of the nature likely to

22

inflame the jury's passions and raise the risk of a conviction based on improper considerations." *Parker v. State*, 309 Ga. 736, 745 (5) (848 SE2d 117) (2020) (citation and punctuation omitted). But here, the material in Exhibit 115—information about Willis's misdemeanor convictions for possession of marijuana and obstructing a law enforcement officer, the narrative of him jumping off a balcony to elude arrest, and the booking report showing his arrest for battery and the revocation of his bond—was relatively mild compared to the crimes with which Willis was charged— murder, armed robbery, and carjacking, among others. Because such information was unlikely to "inflame the jury's passions" against him, and the evidence against Willis was strong, Willis has not established a reasonable probability that the result of his trial would have been different if his counsel had prevented the exhibit from being introduced in full. See id. at 744-47 (5) (in a murder case, defendant not prejudiced by counsel's failure to stipulate to convicted felon status, because evidence of guilt was strong and jury's passions were unlikely to be inflamed by prior convictions for

23

aggravated robbery and bringing prohibited item into government facility); *Moore v. State*, 306 Ga. 532, 534 & n.2 (2) (a) (832 SE2d 384) (2019) (same, with past convictions for possession of marijuana, eluding a police officer, and driving violations); *Ballard v. State*, 297 Ga. 248, 251-52 (6) (a) (773 SE2d 254) (2015) (same, with past convictions for aggravated assault and burglary with intent to commit aggravated assault). So Willis's claim of ineffective assistance on this ground fails.

(b) In a related enumeration, Willis contends that his trial counsel was ineffective for failing to request a jury instruction limiting the jury's use of Exhibit 115 to establishing Willis's status as a convicted felon (and for failing to object when the trial court's jury charge did not include that limiting instruction). But Willis has not shown a reasonable probability that the result of his trial would have been different if the trial court had given that instruction. As we explained in Division (4) (a), the evidence against Willis was strong, and the information in Exhibit 115 was relatively mild compared to the crimes with which he was charged. So the jury

24

knowing all of that information—rather than knowing only that Willis was a convicted felon—was not reasonably likely to change the verdict. By the same token, the absence of an instruction allowing the jury to consider the information in Exhibit 115 only for the purpose of establishing that Willis was a convicted felon was not reasonably likely to change the verdict. Willis's claim of ineffective assistance on this ground fails, too.

(c) Finally, Willis contends his trial counsel was ineffective for failing to move to suppress search warrant SW-007220, which authorized the seizure of his cell-phone records. Willis contends that the warrant, which he introduced into evidence at the hearing on the motion for new trial, was not supported by probable cause because it rested on the uncorroborated statement of his co-defendant, Jordan.

A magistrate may issue a search warrant upon the sworn application of a law enforcement officer that (1) sets forth "facts sufficient to show probable cause that a crime is being committed or has been committed" and (2) "particularly describes the place or

25

person, or both, to be searched and things to be seized." OCGA § 17-5-21 (a). To determine whether probable cause exists, the magistrate must review the search-warrant application and "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Johnson v. State*, 310 Ga. 685, 694 (4) (b) (853 SE2d 635) (2021) (citation and punctuation omitted). The magistrate's decision to issue the warrant is entitled to "substantial deference" by a reviewing court, whose task is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed. Id. (citations and punctuation omitted). And we have held that "when a *named* informant makes a declaration against penal interest and based on personal observation, that in itself provides a substantial basis for the magistrate to credit the statement." *Graddy v. State*, 277 Ga. 765, 766 (1) (596 SE2d 109) (2004) (citation and punctuation omitted; emphasis in original). See also id. ("inculpatory statements that are made by a known or identified informant can establish

26

probable cause for issuance of a search warrant").

Here, Willis has not met the high burden required to overturn the magistrate's probable-cause determination, or, by extension, to suppress warrant SW-007220. See *Johnson*, 310 Ga. at 694 (4) (b). In the probable-cause affidavit supporting the warrant application, Detective Demeester described how he identified Jordan as the possessor of Hagood's stolen cell phone, and how Jordan, in his interview, identified Willis and the other co-defendants, admitted that he was the driver of the group's car at the robbery of Smith, and admitted that he was the driver of one of the group's cars when Hagood was killed. In other words, Jordan, a named informant, gave a statement against his penal interest and based on his personal knowledge. That statement by itself provided a substantial basis for a magistrate to find probable cause. See *Graddy*, 277 Ga. at 766 (1). Moreover, Jordan's statement was not the only evidence supporting the warrant application. The affidavit also attested that Willis's number appeared in Smith's stolen cell phone, which tended to confirm that, at the very least, he knew the person who had stolen

it.

Because the magistrate had a "substantial basis" for concluding that probable cause existed, a motion to suppress would have been meritless. And failing to file a meritless motion to suppress is not deficient performance. See, e.g., *Keller v. State*, 308 Ga. 492, 499 (2) (c) (842 SE2d 22) (2020). So Willis's final claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur, except Peterson, P. J., not participating.*